MURPHY, by Next Friend, v. CARLIN *et al.*, *Appellants.*

Division One, December 22, 1892.

1. **Will:** PRECATORY TRUST. A testator's will, in which the greatest part of his estate was devised to his wife, contained the following clause: "It is my wish and desire that my wife continue to provide for the care, comfort and education of T. J. M., now aged five years, who has been raised as a member of my family since his infancy and to make suitable provision for him in case of her death, provided that he continue to be a dutiful child to her, and shows himself worthy of

such consideration." *Held*, that the condition being performed by T. J. M. the precatory words in the will were sufficient to charge the property therein devised with a trust in his favor.

2. ——: ——. The real question to be determined in such case is whether, looking at the entire context of the will, the testator intended to impose an obligation on the legatee to carry his wishes into effect or intended to leave it to the legatee to act on them or not, at her discretion.

3. ——: ——: REASONABLE PROVISION.   An allowance of $10,000 to T. J. M., out of an estate of $80,000, was not excessive in view of the mode of life to which he had been accustomed, and the reasonable expectations held out to him by his supposed parents.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Rowell & Ferriss, Rassieur & Schnurmacher* and *J. H. Zumbalen* for appellants.

(1) The decree should have been in favor of the defendants, as no trust is raised by the will in favor of plaintiff, because: *First.* The precatory words are insufficient to cut down or limit the prior absolute bequest to the widow. 2 Story's Equity Jurisprudence [13 Ed.] secs. 1069, 1070; 2 Pomeroy's Equity Jurisprudence [2 Ed.] secs. 1015, 1016, 1017, 1019; *Hess v. Singler*, 114 Mass. 57; *Spooner v. Lovejoy*, 108 Mass. 529; *Sears v. Cunningham*, 122 Mass. 538; *Barrett v. Marsh*, 126 Mass. 213; *Foose v. Whitmore*, 82 N. Y. 405; *Campbell v. Beaumont*, 91 N. Y. 464; *Pennock's Estate*, 20 Pa. St. 268; *Hopkins v. Glunt*, 111 Pa. St. 287; *Good v. Miller*, 22 Atl. Rep. (Pa.) 1032; *Bills v. Bills*, 80 Iowa, 269; *Wilde v. Smith*, 2 Denio (N. Y.) 93; *In re Adams & Vestry*, 27 Ch. Div. 394; *Diggles v. Edmondson*, 39 Ch. Div. 253. *Second.* The will shows affirmatively that the testator intended to commit the matter to his wife's discretion. 2 Spence's Equitable

Jurisdiction, 69; *Otway v. Otway*, cited in *Malim v. Keighley*, 2 Ves. Jr. 530; *Ellis v. Ellis' Adm'r*, 15 Ala. 299; *Gilbert v. Chapin*, 19 Conn. 342; *Randall v. Randall*, 135 Ill. 399. *Third.* The subject-matter of the alleged trust is not definite and certain. *Bryan v. Milby*, 24 Atl. Rep. (Del.) 333; *Williams v. Worthington*, 49 Md. 572; *Wynne v. Hawkins*, 1 Bro. 179; *Bland v. Bland*, 2 Cox Ch. Cas. 349; *Fox v. Fox*, 27 Beav. 301; *McNab v. Whitbread*, 17 Beav. 279; *Pope v. Pope*, 10 Simons, 1; *Bank v. Raynor*, L. R. 7 App. Cas. 321; 2 Story's Equity Jurisprudence, sec. 1070. (2) If the will did raise a trust for the plaintiff, then the decree was for an excessive amount and contrary to the law and the evidence, whether the provision was to be a permanent one or was to be limited to the support and education of the plaintiff during minority

*R. A. Bakewell* and *J. L. Hornsby* for respondent.

(1) The precatory words are sufficient to create a trust. *Schmucker's Estate v. Reel*, 61 Mo. 596; *Noe v. Kern*, 93 Mo. 367; *Buck v. Ashbrook*, 59 Mo. 200; *Warner v. Bates*, 98 Mass. 274; *Hunter v. Sternbridge*, 12 Ga. 192; *McRee v. Means*, 34 Ala. 349; *Van Ames v. Jackson*, 35 Vt. 176; *Harrison v. Harrison*, 2 Gratt. 1; *Colton v. Colton*, 127 U. S. 300; *Taylor v. Martin* (S. C. Pa.), 8 Atl. Rep. 920; 1 Jarman on Wills, 680, note 5; *Knox v. Knox*, 59 Wis. 172; *Foley v. Perry*, 2 Mylne & K. 138; *Ericson v. Wittard*, 1 N. H. 217; Perry on Trusts, sec. 112; *Row v. Stuyvesant*, 8 Johns. 426. (2) Where a testator in one part of his will gives to a person an absolute estate, and in a subsequent passage shows that he meant the devisee or legatee to take a lesser interest, or to hold the property devised or bequeathed, or any part of it, impressed with a trust, the gift is restricted accordingly. *Knight v. Knight*, 3 Beav.; *Smith v. Bell*, 7 Pet. 68; *Taylor v.*

*Martin*, 8 Atl. Rep. (Pa. St.) 920; *Bohon v. Barrett*, 79 Ky. 383; *Ericson v. Wittard*, 1 N. H. 228; *Knox v. Knox*, 59 Wis. 172; *Lucas v. Lockhart*, 10 Sm. & M. 471; *Lewis v. Pittman*, 101 Mo. 281; *Hawley v. Northampton*, 8 Mass. 40; Hill on Trustees [4 Ed.] side p. 71; Perry on Trusts, sec. 112; Story's Equity Jurisprudence, [4 Ed.] 452, sec. 1068. (3) There is sufficient certainty in both the subject and object of the precatory devise in the case at bar. *Farwell v. Jacobs*, 4 Mass. 634; *Griffith v. Evans*, 5 Beav. 341; *Harrison v. Harrison*, 2 Gratt. 10; *Ericson v. Wittard*, 1 N. H. 230; *Gillam v. Chancellor*, 43 Miss. 437; *Warner v. Bates*, 98 Mass. 278; Wigram on Wills, 155; *Noe v. Kern*, 93 Mo. 367; *Broad v. Bevan*, 1 Russ. 511 note; *Kilvington v. Gray*, 10 Sim. 293; *Foley v. Perry*, 5 Sim. 138; *Pride v. Fooks*, 2 Beav. 430.

BRACE, J.—This is an action in the nature of a bill in equity to enforce a precatory trust alleged to arise under the will of John Whelan, who died January 9, 1882. The will is dated May 13, 1880, and provides as follows:

"*First.*—For payment of debts and funeral expenses.

"*Second.*—Legacy of $1,500 to the testator's sister, Mary Conners.

"*Third.*—Legacy of $1,000 to Mollie Curran, the child of the testator's niece, Ann Conners.

"*Fourth.*—Legacy of $1,000 to John Cullinane in recognition of many years of faithful service.

"*Fifth.*—I give, bequeath and devise all the rest of my property, both real and personal, and of every kind, nature and description, unto my dearly beloved wife, Margaret, and to her heirs and assigns forever, to have and to hold the said property with all privileges and appurtenances thereto belonging unto my said wife, Margaret, and to her heirs and assigns forever.

"*Sixth.*—It is my wish and desire that my wife continue to provide for the care, comfort and education of Thomas Joseph Murphy, now aged nearly five years, who has been raised as a member of my family since his infancy, and to make suitable provision for him in case of her death, providing that he continue to be a dutiful child to her and shows himself worthy of such consideration."

After the death of Whelan, his widow, the said Margaret, inter-married with William P. Smythe, and afterwards died intestate, seized of certain real estate situate in the city of St. Louis and described in the petition, purchased by her during her widowhood, with the proceeds of property acquired by her by said will. The defendants are the heirs at law of the said Margaret.

The circuit court found for the plaintiff, awarding him the gross sum of $10,000, and charged the same as a lien upon said real estate, and defendants appealed.

The testator by his will appointed his wife sole executrix thereof without bond.   At the time he executed the will, and at the time of his death he was possessed of a large estate, and was living in a style befitting that estate, which was the fruit of his own economy and industry.   His widow, after paying all the specific legacies contained in the will, funeral expenses and other liabilities, received of the personal estate as sole legatee under the will, as appears from her last settlement made April 15, 1884, the sum of $86,630.39 in cash or its equivalent.   The testator and his wife had no children.   The plaintiff, who is a minor, suing by his next friend (at the time of the trial of the age of fifteen years), was taken by Mrs. Whelan when he was eighteen months old to be reared as her own child. He was then an orphan, the son of respectable parents, and under the control of his mother's relations, his father and mother both having died but a short time before.   He was never formally adopted by the testator, but was taken into his family, given his surname, and ever afterwards treated as a favorite son by him and his wife until they died, and never found out that he was not their son until after Mrs. Whelan's death. He was about seven years old when Mr. Whelan died, and about ten when Mrs. Whelan died, was a dutiful.

child and fully reciprocated the affection of his supposed parents.

I. The cardinal rule prescribed by the legislature of this state for "all courts and others concerned in the execution of last wills" is to "have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them." Revised Statutes, 1889, sec. 8916.

The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of wills by putting themselves, so far as may be, in the place of the testator and reading all his directions therein contained in the light of his environment at the time it was made. *Hall v. Stephens*, 65 Mo. 670; *Noe v. Kern*, 93 Mo. 373; *Suydam v. Thayer*, 94 Mo. 49; *Munro v. Collins*, 95 Mo. 33; *Small v. Field*, 102 Mo. 104; *Long v. Timms*, 107 Mo. 512. When that intent and meaning can be thus clearly ascertained, then all technical rules and adjudicated cases in other jurisdictions that would stand in the way of its execution must be disregarded.

In *Schmucker's Estate v. Reel*, 61 Mo. 592, the prevailing doctrine in regard to precatory trusts was recognized to be "that no particular form of expression is requisite in order to create a binding and valid trust; and that words of recommendation, request, entreaty, wish or expectation will impose a binding duty upon the devisee by way of trust, provided the testator has pointed out with sufficient clearness and certainty both the subject-matter and the object of the trust." This rule was again recognized by this court in *Noe v. Kern*, *supra*, in which it was said: "In this class of cases the difficulty is not as to what the rule is, but as to its application." "Every case must depend upon the construction of the particular will under consideration. The point really to be determined * * * is,

whether looking at the whole context of the will the testator intended to impose an obligation on his legatee to carry his wishes into effect, or whether, having expressed his wishes, he intended to leave it to the legatee to act on them or not at his discretion." 1 Perry on Trusts [3 Ed.] sec. 114. BIGELOW, C. J., in *Warner v. Bates*, 98 Mass. 276, says in regard to this rule: "The criticisms which have been sometimes applied to this rule by text-writers and in judicial opinions will be found to rest mainly on its application in particular cases, and not to involve a doubt of the correctness of the rule itself as a sound principle of construction. Indeed, we cannot understand the force or validity of the objections urged against it, if care is taken to keep it in subordination to the primary and cardinal rule that the intent of the testator is to govern, and to apply it only where the creation of a trust will clearly subserve that intent."

As thus explained this rule was applied by this court in the case of *Noe v. Kern, supra.* In that case a childless married couple had taken two children to raise. The wife was possessed of an estate and died before her husband. The children were the offspring of the wife's deceased brother; they were both frail, in bad health, and without any means of support. They had been taken into the family and treated as the children of the testatrix and her husband, though never legally adopted. The wife by her will devised and bequeathed all her estate to her husband absolutely, and added, "I make this bequest in the full faith that my husband will properly provide for the two children of my deceased brother Simeon, whom we have undertaken to raise and educate," and appointed her husband executor of her will. He died two days after the death of his wife without having made any provision in his will for the children. And we held that the property

devised to the husband was charged by the will with a trust for the benefit of the children.

That case is strikingly analogous to the one in hand, and most of the objections urged against a similar holding here are answered in the opinion in that case. As in that, so in this case, both the subject-matter and object of the trust are pointed out with sufficient clearness and certainty. The precatory words in this case are a positive and unequivocal expression of the wish and desire of the testator; and the fact that the whole estate is bequeathed absolutely and immediately before the precatory words are used, ought not in this, as they did not in that case, prevent the trust from attaching—provided such was the intention of the testator. *Knight v. Knight*, 3 Beav. 172; *Bohon v. Barrett*, 79 Ky. 378; *Warner v. Bates*, 98 Mass. 274; *Ericson v. Wittard*, 1 N. H. 217; *Knox v. Knox*, 59 Wis. 172; *Colton v. Colton*, 127 U. S. 300; Hill on Trustees, p. 71; 1 Jarman on Wills, 680.

So that we recur to the main proposition, as stated by Mr. Perry: Did the testator, in this will having expressed his wishes, intend to impose an obligation upon his legatee to carry them out; or to leave her to act on them or not at her discretion? In considering this question it is to be remembered that the devisee is the wife of the testator, between whom it is not expected that commands would be expressed in such forcible language as between strangers. *Warner v. Bates*, 98 Mass. 274; *Knox v. Knox*, 59 Wis. 172. That not only as wife and legatee receiving the great bulk of his estate was her conscience charged with the duty out of the abundance of the estate given her to make provision for this child; but that, as executrix, she was charged by him and by the law with the duty of carrying out "his directions," according to the true intent and meaning of the testator. That it was his intention

that she should be imperatively charged with that duty, is apparent from the circumstances surrounding the transaction, as well as upon the face of the will. Here was a helpless infant, an affectionate boy, reared in his family without means and without friends to assist him in the battle of life, taught to regard the testator as his father and to look to him for protection, and for whom he seems to have had a father's affection; a woman young enough to contract future marital relations that might seriously interfere with the protection which he knew she was then disposed to give him. Is it not more reasonable that he should have intended to make the provision for him obligatory upon his wife rather than to leave his fate to the whim and caprice of herself or some future husband? If this boy had been the testator's natural born son, who would have a doubt of it? And yet he seems to have entertained the same sort of affection for this boy "who had been raised as a member of his family since his infancy." Why then make a distinction in interpreting his will? That his wife was to be be charged with the obligation "to continue to provide for the care, comfort and education" of the child, and "in case of her death, make a suitable provision for him," seems manifest from the fact that he placed in the will itself the condition upon which she was to be released from that obligation, *i. e.*, "Should he show himself unworthy of such consideration." There was no necessity for this provision, if his wife was to have unlimited discretion to provide for the plaintiff or not, as she might choose. He named the condition and (*expressio unius exclusio alterius*), the only condition upon which her failure to execute his wishes in that behalf should be excused. Hence, the condition being performed, the duty became imperative.

In the will and the circumstances of this case is

found an apt illustration of the testator's idea of the difference between an unlimited discretion and the obligatory character of this provision thereof. Before this boy had been taken into the testator's family, another child had been so taken by him and his wife. She was some years older than the plaintiff, and a relative of the testator, and he seems to have been sincerely attached to her also. To this child, Mollie Curran, he made a specific bequest of $1,000, and about her said nothing more, but left her future comfort and education to be provided for or not, as his wife might choose. The provision for the plaintiff is in striking contrast with his action in respect to her, and he certainly did not intend to leave him in a like condition dependent entirely upon the good will of his wife, or he would doubtless have treated him in his will in like manner.

That the force of her obligation to provide for the plaintiff was recognized by Mrs. Whelan is evidenced by the fact that during her life she continued to provide for his care, comfort and education, and frequently told her second husband that she intended to leave him the very property sought to be charged in this case. That it was the duty of Mrs. Whelan to make a suitable provision for the plaintiff out of the estate which her husband bequeathed her, we think is evident from what has been said, and, she having died without having done so, a court of equity ought to make that provision for him.

In view of the amount of the estate bequeathed, the mode of life to which the testator and his wife had accustomed this plaintiff, and the reasonable expectations that would be engendered by the treatment which he received from his supposed parents during their lives, the amount allowed by the circuit court was entirely reasonable, and its decree will be affirmed. All concur except BARCLAY, J., not sitting.