IN RE ESTATE OF JESSE H. McVEIGH, Deceased; STATE OF MISSOURI, ex rel. JOHN P. GORDON, Appellant, v. HARRY H. McVEIGH et al., Respondents.

St. Louis Court of Appeals, March 3, 1914.

1. **COLLATERAL INHERITANCE TAX: Construction of Law.** The collateral inheritance tax law (Art. XIV, Chap. 2, R. S. 1909) is to be construed strictly against the State and in favor of the taxpayer, and a doubt as to the taxability of a particular fund should be resolved in favor of the latter; but the construction should not be so narrow or technical as to defeat the intent and purpose of the law makers, but should be such as to effectuate the proper and legitimate objects of the statute.

2. **WILLS: Construction.** In construing a will, the intention of the testator, if not in conflict with public policy or some inflexible rule of law, must control.

3. ———: ———. A will, like any other written instrument, should be construed, if possible, so as to give full force and effect to each and all of its paragraphs and clauses.

4. ———: **Precatory Trust.** The existence or nonexistence of a precatory trust in a will depends upon whether, taking the will as a whole, the testator intended to impose an obligation on his legatee to carry his wishes into effect, or, having expressed his wishes, he intended to leave it to the legatee to act on them, or not, in his discretion.

5. **COLLATERAL INHERITANCE TAX: Taxability of Bequest: Wills: Precatory Trust.** Testator bequeathed to the widow of his deceased son $25,000, and, in a succeeding clause, bequeathed

to his grandchild, the son of the widow, $1, stating that he thought best to give the mother a sufficient sum to enable her to supply the son's needs according to her discretion, knowing that she would do what was best and proper in the matter, and there-fore he limited his gift to the grandchild to a nominal sum. *Held*, that the two clauses did not constitute a precatory trust in favor of the grandchild, since no obligation was intended to be imposed upon the legatee with respect to the fund in ques-tion, but it was intended to leave it to her discretion as to what provision, if any, she would make for her son out of said fund, and hence the bequest was subject to the payment of a collateral inheritance tax, under Article 14, Chapter 2, R. S. 1909.

6. **WILLS: Construction: Interpretation by Testator.** In con-struing a will to determine whether or not it created a precatory trust, the fact that testator created a technical spendthrift trust in the will and did not expressly create a precatory trust with respect to the fund in question is quite persuasive that he did not intend to create such a trust.

7. ———: ———: **Limitation on Bequest: Precatory Trust.** An estate which is granted in plain and unequivocal language in one clause of a will cannot be lessened or cut down by a subsequent clause, unless the language of the latter is as clear, plain and unequivocal as that of the first, granting it; so that where a testator bequeathed to his son's widow $25,000, and, in a subsequent clause, gave $1 to the widow's son, stating that he thought best to give the mother a sum sufficient to enable her to supply the son's needs according to her discretion, knowing that she would do what was best and proper in the matter, and that he therefore limited his gift to the grandchild to a nominal sum, such subsequent clause could not be construed to cut down the absolute bequest to the widow in the prior clause.

8. ———: ———: **Interpretation by Testator.** When a testator interprets a particular clause in his will, the courts, when called upon to construe it, will follow that interpretation.

9. ———: ———: **Evidence: Declarations of Testator.** Alleged declarations of a testator, supposed to have been made after the execution of his will, are incompetent as bearing on the construction of the will.

10. ———: ———: **Evidence: Extraneous Circumstances.** While extraneous evidence of facts and circumstances surround-ing a testator may be resorted to, where necessary to con-strue his will, yet, if the will is unambiguous, it must be inter-preted without the aid of such evidence.

State ex rel. v. McVeigh.

Appeal from Hannibal Common Pleas.—*Hon. William T. Ragland*, Judge.

REVERSED AND REMANDED (*with directions*).·

*Charles T. Hays* for appellant.

(1) (a) It is well settled that the oral testimony with respect to Judge McVeigh's declaration of his intention was incompetent, for declarations of a testator as to his intentions with respect to the making of his will are inadmissible to show his intention to create a trust, as such declarations would be in effect the establishment of a testamentary disposition by parol. Updike v. Mace, 194 Fed. 1001; Lehnhoff v. Theine, 184 Mo. 346; Mersman v. Mersman, 136 Mo. 256; Gregory v. Cowgill, 19 Mo. 415. (b) The oral testimony as to the testator's surroundings, even if this be a proper case for such evidence, throws no light on his intention. It merely shows that Harry had a dislike for work and a desire to spend money and that his grandfather had given him spending money at various times. So that the will must be construed from its own terms. (2) The construction of the will, whether gathered from the will alone or from the will and surrounding circumstances, was a question of law for the court, and the issues of law presented by the pleadings and evidence will be reviewed by the appellate court, notwithstanding instructions were not asked. Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578; 40 Cyc. 1427; State ex rel. v. Shacklett, 115 Mo. App. 719. (3) The case having been tried before the court, though the appellate court will not reverse on account of the incompetent oral testimony erroneously admitted and presumably considered by the trial court, it will disregard the improper evidence. Zahm v. Royal Fraternal Union, 154 Mo. App. 79. (4) An absolute estate is not to be cut down. Sec. 579, R. S. 1909. In

view of that statute, the bequest to Carrie C. McVeigh gives her an absolute estate in the legacy, which cannot be impaired, cut down or qualified except by words as affirmatively strong as those employed in conveying it. Small v. Field, 102 Mo. 104; Sevier v. Woodson, 205 Mo. 202; Settle v. Shafer, 229 Mo. 568; Roth v. Rauschenbush, 173 Mo. 582; Roberts v. Crume, 173 Mo. 580; Pratt v. Railroad, 130 Mo. App. 191.  (5) It is submitted that in the paragraph relating to Harry there are no words as affirmatively strong as those in the preceding item. The phrase, "knowing she will do what is just and proper in the matter," contains the only words which may, even by a strained interpretation, be claimed to create a precatory trust. But they cannot be construed to impose any enforceable obligation on Carrie McVeigh as will be clearly shown. (a) Such a construction would render this paragraph repugnant to the preceding one. It is the rule that "A trust will not be implied if such a construction of the precatory words would render them repugnant to or inconsistent with other parts of the same instrument. If construing a recommendation or the expression of a wish into a trust would contradict in terms the preceding bequest, a trust will not be implied. As if the gift is absolute, and all of the testator's property and of both the legal and equitable interest in it, words of recommendation will not cut it down into a trust." 1 Perry on Trusts, Sec. 115; Sevier v. Woodson, 205 Mo. 214. (b) No trust is implied where the words simply state the motive leading to the gift, as where the gift is to a person "to enable him to maintain the children," or an absolute gift is made, and the motive stated "that he may support himself and children," or a gift is made absolutely for her own use and benefit, "having confidence in her sufficient and judicious provision for the children." And it may be added that the mere expression of a purpose for which a gift is made does not render it obligatory. . . . And where

money is given to trustees, and a discretion is given to them how much and in what manner they shall apply it, the *cestui que trust* has no right to more than the trustees see fit to apply." 1 Perry on Trusts, Sec. 119; Small v. Field, 102 Mo. 125; O'Donnell v. Murphy, 120 Pac. 1077. (6) In the paragraph relating to Harry the testator placed his own construction on the bequest made to Carrie C. in the preceding paragraph, by giving him a nominal gift on the theory that nothing had been previously left him and doubtless to avoid pretermitting Harry, and by following the nominal gift with an explanation of his motive and with a statement to the effect that he had made a bequest to the mother without condition or limitation. There can be no doubt about the meaning of this language, and the testator's construction will be adopted. Small v. Field, 102 Mo. 129; Murphy v. Carlin, 113 Mo. 121; In re Mitchell's Estate, 117 Pac. 774. (7) The testator knew how to make, and did make a limited trust for the benefit of Julia E. and Walton N. Moore in paragraphs 1 and 7 of the will. Murphy v. Carlin, 113 Mo. 120. He knew how to make, and did make with professional skill and clearness in paragraphs 2 and 5, a technical spendthrift trust in favor of his son Edwin A. McVeigh. Jarboe v. Hey et al., 122 Mo. 347. These facts are conclusive that he did not intend to create a trust for Harry. Small v. Field, 102 Mo. 128; Murphy v. Carlin, 113 Mo. 121.

*Geo. A. Mahan, Albert R. Smith* and *Dulany Mahan* for respondents.

(1) The testator, Jesse H. McVeigh, by his will created a precatory trust to the amount of twenty-five thousand dollars in favor of his grandson, Harry H. McVeigh. Noe v. Kern, 93 Mo. 367; Long v. Timms, 107 Mo. 512; Schorr v. Carter, 120 Mo. 413; Drake v. Crane, 127 Mo. 85; Nichols v. Boswell, 103 Mo. 151;

Murphy v. Carlin, 113 Mo. 117; Schumuker v. Reel, 61 Mo. 592; Harrison v. Harrison, 44 Am. Dec. 365; Perry on Trusts, Sec. 112, Chap. 4; McMillan v. Farrow, 141 Mo. 55. (2) The bequest to Carrie C. McVeigh, mother of Harry H. McVeigh, for the use and benefit of Harry, the lineal descendant of the testator, Jesse H. McVeigh, was not subject to the collateral inheritance tax. Sec. 309, R. S. Mo. 1909.

*F. C. Donnell* for Curators of the University of Missouri.

(1) Carrie C. McVeigh's estate cannot be qualified except by words as affirmatively strong as those which conveyed the estate. Revised Statutes of Missouri, 1909, section 579; Small v. Field, 102 Mo. 104; 40 Cyc. p. 1737. (2) The test of a precatory trust is the clear intent of the testator to imperatively control the conduct of the party to whom the language of the will is addressed and not to commit to his discretion the exercise of the option to comply or refuse to comply with the suggestion made. Guided by this principle the bequest to Carrie C. McVeigh cannot be properly held to be a precatory trust. Burnes v. Burnes, 137 Federal 781; Cyc. 40, page 1735. (3) In any view of the case—whether the will be construed to create a precatory trust or merely to express a suggestion—the judgment of the *nisi prius* court should not be affirmed; for, at most, even under the view of the view of the law urged by respondent, the grandchild could have no greater interest in the $25,000 fund and no greater right therein than is comprehended in the supplying of his needs; consequently even though respondent's theory of the law—in which we do not concur—be followed, the judgment of the lower court would have to be reversed and the cause remanded in order to furnish the court with evidence as to what sum is necessary to supply the needs of the grandson.

ALLEN, J.—This is an action instituted at the relation of the State Auditor, under article XIV, chapter 2, Revised Statutes, 1909, to recover the collateral inheritance tax claimed to be due upon a certain legacy bequeathed by the last will and testament of Jesse H. McVeigh, deceased. The case was tried below by the court, without the intervention of a jury, resulting in a finding and judgment for the defendants upon the ground that the legacy in question is not subject to the said tax, and the case is here upon the relator's appeal.

Judge Jesse H. McVeigh died testate in Marion county, Missouri, on October 14, 1910, leaving a large amount of property, real and personal. The legacy in question, which it is claimed is subject to the collateral inheritance tax, is one of twenty-five thousand dollars, referred to in the following clauses of the will, viz.:

"To Carrie C. McVeigh, widow of my son Jesse Walker McVeigh, deceased, I give and bequeath the sum of twenty-five thousand dollars.

"To my grandchild Harry H. McVeigh I give one dollar. I think it best to give his mother, Carrie C. McVeigh, a sufficient sum to enable her to supply his needs according to her discretion, knowing that she will do what is just and proper in the matter, and therefore limit my gift to him to a nominal sum."

Section 309, being one of the sections of said article XIV, chapter 2, Revised Statutes, 1909, provides in part as follows:

"All property which shall pass by will . . . to any person or persons, or to any body politic or corporate, either directly or in trust or otherwise, or by reason whereof any person or body politic or corporate shall become beneficially entitled in possession or expectancy, to any property or the income thereof, other than to and for the use of the father, mother, husband, wife, legally adopted children, or direct lineal descendant of the testator, . . . shall be and is subject to

the payment of a collateral inheritance tax of five dollars for each and every one hundred dollars of the clear market value of such property.''

The question involved, viz., whether the legacy of twenty-five thousand dollars is subject to the collateral inheritance tax imposed by the State, depends upon the construction to be placed upon the clauses of the will above set out. If, on the one hand, the bequest is an absolute one to Carrie C. McVeigh, the daughter-in-law of the testator, then it is subject to the tax. But if, on the other hand, the terms of the will relative thereto should be construed to create a trust in favor of Harry H. McVeigh—his mother, Carrie C. McVeigh, being merely a trustee for him—then it is not subject to the said tax; for the reason that said Harry H. McVeigh is the grandson and lineal descendant of the deceased, and hence anything which he may take under the will is, by the express terms of the statute, exempted from such tax.

At the threshold of this question it may perhaps be well to say that an inheritance tax law is construed strictly against the State and in favor of the taxpayer; and that a doubt as to the taxability of a particular fund should be resolved in favor of the citizen. However, the construction should not be so narrow or technical as to defeat the intent and purpose of the lawmakers, but should be such as to effectuate the proper and legitimate objects of the statute. [See 37 Cyc., p. 1556, and authorities cited.]

It is elementary that, in construing a will, the intention of the testator, if not in conflict with public policy or some inflexible rule of law, must control. [See Settle v. Shafer, 229 Mo. 561, 129 S. W. 897; Burnet v. Burnet, 244 Mo. 291, 148 S. W. 872; Cornet v. Cornet, 248 Mo. 184, 154 S. W. 121; Sec. 583, Rev. Stat. 1909.] Another fundamental rule of construction is that a will, like any other written instrument, should be construed, if possible, so as to give full force and effect

to each and all paragraphs or clauses thereof. [See Cornet v. Cornet, supra; Armor v. Frey, 226 Mo. 646, 126 S. W. 483.]

The will bequeaths to two daughters of the testator twenty-five thousand dollars each, to two of his grandchildren twenty-five thousand dollars, i. e., twelve thousand five hundred each, and to a son twenty-five thousand dollars. Then follow the two paragraphs quoted above and various other clauses. Among the latter is a provision creating what is termed a spendthrift trust with respect to the fund of twenty-five thousand dollars left to the testator's son, as above mentioned. And by another clause the above mentioned fund left to the grandchildren was provided to be held in trust for them until each should arrive at a certain age.

It is earnestly contended by respondents that the second of the two clauses above quoted creates what is known as a precatory trust in favor of the testator's grandson, Harry H. McVeigh, and makes the latter's mother merely a trustee with respect to the fund in question, and that therefore the legacy is not subject to the collateral inheritance tax; and such was the view taken by the lower court. Appellant's position is, that no trust was created, but that Carrie C. McVeigh took the fund in question absolutely; and that whatever future provision she might make for her son was a matter left entirely to her discretion.

As to what will create a precatory trust, it is said: "Every case must depend upon the construction of the particular will under consideration. The point really to be determined in all of these cases is whether, looking at the whole context of the will, the testator intended to impose an obligation on his legatee to carry his wishes into effect, or whether, having expressed his wishes, he intended to leave it to the legatee to act on them or not at his discretion." [1 Perry on Trusts and Trustees (6 Ed.), Sec. 114; Murphy v. Car-

lin, 113 Mo. 119, 20 S. W. 786; Noe v. Kern, 93 Mo. 371, 6 S. W. 239.]

In Underhill's "Law of Trusts and Trustees," respecting precatory trusts in general, it is said: "As laid down in the older cases, the rule of interpretation might be stated thus: If a gift in terms absolute is accompanied by a desire, wish, recommendation, hope, or expression of confidence that the donee will use it in a certain way, a trust to that effect will attach to it. But of late the distinction between positive rules of law and so-called rules of interpretation has become universally recognized by the courts, and the modern way of judging whether precatory expressions were intended to impose enforceable trusts might be stated in almost precisely opposite terms to the above, viz.: If a gift in terms absolute is accompanied by a desire, wish, recommendation, hope, or expression of confidence that the donee will use it in a certain way, no trust to that effect will attach to it, unless on the will, as a whole, the court comes to the conclusion that a trust was intended." [See Underhill's Law of Trusts and Trustees (7 Ed.), p. 24, *et seq.* and authorities cited.].

In Lewin's "Law of Trusts," it is said of trusts of this character, that no trust will arise, "if, all circumstances considered, it is more probable that the testator meant to communicate a mere discretion." [Lewin's Law of Trusts, pp. 153, 154 and authorities cited.]

And again the same author, in speaking of such trusts, says: "The current of decisions has of late years set against the doctrine of converting the devisee or legatee into a trustee; (and although 'it would be an entire mistake to suppose that the old doctrine of precatory trusts is abolished,' yet undoubtedly the court now refuses to extend the doctrine, or to regard the mere use of particular words, and will not imply a trust, unless it appears from the whole will that an

obligation was intended to be imposed by the testator). Under the head of trusts which we are now considering, may be classed the cases where property is given to a parent or other person standing or regarded *loco parentis*, with a direction touching the *maintenance* of the children. The first question is: Did the settlor intend to impose a trust, or do the words express only the motive of the gift? Instances where *no trust* is created are, where the bequest is to a person 'to enable him to maintain the children,' or an absolute bequest is made, and afterwards the motive is assigned, as 'that he may support himself and his children,' . . . or 'to A. for her own use and benefit absolutely, having full confidence in her sufficient and judicious provision for her children.'" [Lewin's Law of Trusts, pp. 156, 157, and authorities cited.]

In Corby v. Corby, 85 Mo. 371, it is held that "a precatory trust is not to be inferred from expressions of confidence or desire on the part of the testator contained in the will regarding the use to be made of the property devised or bequeathed, unless it fairly appears from the will that the testator contemplated and intended to create such trust, and that especially will not such trust be implied when it clearly appears from the will that the testator intended to give the devisee full discretion in the use of the property. In this connection see: In re Mitchell Estate, 160 Cal. 618, 117 Pac. Rep. 774; O'Donnell v. Murphy, 17 Cal. App. 625, 120 Pac. Rep. 1076; Floyd v. Smith, 59 Fla. 485, 51 So. 537.

A consideration of the language used by the testator in the two clauses of his will in question, taken together with the remaining provisions of the will, and considering the latter as a whole, leads us to the conclusion that no obligation was intended to be imposed upon the testator's daughter-in-law with respect to the fund in question, but that it was intended to leave it entirely to her discretion as to what provision if any,

she would make for her own son out of said fund which she took under the will.

By the first of the two clauses quoted above, an absolute gift of this fund is clearly made to Carrie C. McVeigh. The 'next clause bequeaths one dollar to her son; the testator expressly saying that he limited his gift to the son (the testator's grandson) to such nominal sum, explaining that he thought it best to give the mother "a sufficient sum to enable her to supply his needs according to her discretion, knowing that she will do what is just and proper." There would appear to be here no ground for saying that an obligation was intended to be imposed upon this young man's mother with respect to what provision she should make for him out of the fund in question; but it does, we think, clearly appear that the testator intended merely to leave this matter entirely within her discretion. In this connection it is to be noted that he said he thought it best to give the mother a sufficient sum to enable her to supply her son's *needs* according to her discretion. It was therefore left entirely to her to determine what were to be considered as his "needs" or necessities, and what in their judgment would supply them. What are one's needs or necessities must depend in great measure upon his station in life; and what will supply them is a matter as to which there may be much difference of opinion. [See Sevier v. Woodson, 205 Mo. l. c. 208-213, 104 S. W. 1.]

And we are confirmed in this conclusion by a survey of the will as a whole. While there was no effort to explicitly create a trust with respect to this particular fund, there were other trusts clearly created by the will. Not only was the interests of two other grandchildren placed in trust, but the testator clearly created, in unmistakable terms, a spendthrift trust with respect to the moneys which he left to his son. It thus appears that the testator knew how to make and

did create, even with skill and clearness, a technical spendthrift trust in his will. And the fact that he did not do so with respect to the fund here in question is quite persuasive that he did not intend to create such a trust. [See Small v. Field, 102 Mo. l. c. 128, 14 S. W. 815.]

In this connection learned counsel for respondents earnestly contend that the will, taken as a whole, shows that the testator intended to leave twenty-five thousand dollars in trust to each of his children, or, if they were dead, in trust for their children. As to this we may say that it does appear that the testator intended to make some such general division of his property. However, it by no means appears that he intended to create a trust with respect to the fund here in question; for the inference is that had he intended to do so he would have plainly created such trust just as he created other trusts in his will. And that he saw fit to give this twenty-five thousand dollars to the widow of his deceased son, instead of to this grandson, is in no way inconsistent with the other provisions of the will.

Learned counsel for respondents have cited us to many authorities in support of their position that the language here employed imposed an obligation upon Carrie C. McVeigh and creates a trust in favor of her son. A discussion of all such cases would perhaps serve no useful purpose, but the following decisions of our Supreme Court should be noticed.

In Noe v. Kern, 93 Mo. 367, 6 S. W. 239, a testatrix devised all of her property to her husband, saying: "I make this bequest in the full faith that my husband will properly provide for the two children of my deceased brother, Simeon, whom we have undertaken to raise and educate." The court, after stating the rule to be applied relative to trusts of this character, as found in Perry on Trusts, supra, held that the language in question created a precatory trust. The

two infant plaintiffs were children of the testatrix's deceased brother, both were frail, in bad health and without means of support. One was so afflicted that it appeared she would never be able to contribute to her own support. They had been taken into the family of the testatrix and her husband and treated as their children, and it appears that they had been the objects of great solicitude, both on the part of the testatrix and her husband, until the former's death. The husband died three days after his wife, having been, during the said period after her death, in a state of stupor and unable to transact business.

The facts of that case undoubtedly afforded more cogent reasons than here appear for holding that the language used was intended to import an obligation rather than the mere expression of a wish or desire.

In Murphy v. Carlin, supra, a testator devised his property to his wife, saying: "It is my wish and desire that my wife continue to provide for the care and comfort and education of Thomas Joseph Murphy, now aged nearly five years, who has been raised as a member of my family since his infancy, and to make suitable provision for him in case of her death, provided that he continue to be a dutiful child to her and shows himself worthy of such consideration." This was likewise held to create a precatory trust. In discussing the question involved, the court said: "Did the testator, in this will, having expressed his wishes, intend to impose an obligation upon his legatee to carry them out; or to leave her to act on them or not at her discretion? In considering this question it is to be remembered that the devisee is the wife of the testator, between whom it is not expected that commands would be expressed in such forceable language as between strangers. [Warner v. Bates, 98 Mass. 274; Knox v. Knox, 59 Wis. 172.] That not only as wife and legatee receiving the great bulk of his estate was her conscience charged with the duty out of the abundance of

the estate given her to make provision for this child; but that, as executrix, she was charged by him and by the law with the duty of carrying out 'his directions,' according to the true intent and meaning of the testator. That it was his intention that she should be imperatively charged with that duty is apparent from the circumstances surrounding the transaction, as well as upon the face of the will.''

The court then referred to the fact that the child in question was a helpless infant, an affectionate boy, reared in the testator's family, without means and without friends, etc., and said that it was reasonable to suppose that the testator intended to make the provision for the child obligatory upon his wife, ''rather than to leave his fate to the whim and caprice of herself or some future husband.''

In both of the cases just referred to, the precatory words, while differing somewhat from those here employed, were used between husband and wife, and with reference to the support and maintenance of helpless infants, not their natural children. In the instant case, the putative trustee is the testator's daughter-in-law, who is bequeathed a sum of money, the testator stating that he left it to her discretion to make such provision for her own son as she might see fit. Naturally the testator had every reason to believe that the mother could be fully entrusted to provide for her own son if his necessities required it. The latter is a young man past his majority. And it would seem that no inference could arise from the surrounding circumstances, that the testator intended to impose upon the mother a binding obligation in the premises.

There is still a further reason perhaps why the will should be construed as we have indicated above. It is well settled law that where an estate is granted in plain and unequivocal language in one clause of a will, it cannot be lessened or cut down by a subsequent clause thereof unless the language of the latter is as

clear, plain and unequivocal as that of the first grant. [See Sevier v. Woodson, supra; Settle v. Shafer, 229 Mo. 361, 129 S. W. 897; Cornet v. Cornet, 224 Mo. l. c. 223-225, and authorities there cited.] It has been frequently said that all canons of construction must give way to the apparent intention of the testator. But it appears that to apply the rule of construction just referred to does not here do violence to the intention of the testator, as gleaned from the entire will, but rather to be consistent and harmonious therewith.

It is quite clear that by the first of the two clauses herein above quoted, the fund in question was granted absolutely and unequivocally to Carrie C. McVeigh. Looking at this clause alone, there can be no shadow of doubt as to this. The language of the immediately succeeding clause certainly does not clearly, plainly and unequivocally create a trust, or impose other limitations upon the prior absolute grant. We think in fact that it is clear that it creates no trust; but certain it is that it cannot be said to do so by language as plain, clear and unambiguous as that used in the immediately preceding clause. And it therefore, in our judgment, cannot operate as a limitation upon the absolute estate granted by the preceding clause.

And another rule that appears to be appropriate for application here is that when a testator interprets a particular clause in his will, the courts, when called upon to construe it, will follow that interpretation. [See Small v. Field, supra, l. c. 129.] It would here appear that the testator placed his own construction upon the nature of the bequest here in controversy. In the second of the two clauses above quoted, he gives to his grandson one dollar, stating that he has made a gift or bequest to the mother and that he limits his gift to the grandson to said nominal sum. It thus appears that the testator, who was a lawyer, understood that he was making this bequest to the mother as her absolute property, and that what he was giving to the

grandson was in fact only the nominal sum of one dollar, leaving it wholly to the mother's discretion to make such provision for her son as she thought best. And, by contrast, other provisions in the will tend to confirm this; for, in providing for his son and his other grandchildren, he made specific bequests directly to them, afterwards limiting each, in clear and unequivocal terms, by creating a trust with respect thereto.

A point is made respecting the ruling of the trial court in admitting testimony relative to certain alleged declarations of the testator, supposed to have been made after the execution of the will. That such declarations were incompetent we think cannot be doubted. [Mersman v. Mersman, 136 Mo. l. c. 256, 37 S. W. 909; Lehnhoff v. Theine, 184 Mo. l. c. 357, 83 S. W. 469; Hayes v. Hayes, 242 Mo. l. c. 170, 145 S. W. 1155.]

While extraneous evidence of the facts and circumstances surrounding the testator may be resorted to where necessary (Settle v. Shafer, supra, l. c. 568), it is said: "If the will within its four corners is unambiguous, it must be interpreted without the aid of extraneous evidence, which can only be considered when the terms of the will are of doubtful import, and then only to explain its latent meaning. [Brown v. Tuschoff, 235 Mo. l. c. 456, 138 S. W. 497.] It does not appear to us that the terms of this will are ambiguous or of doubtful import. But however this may be, considering the surrounding facts and circumstances shown in evidence, we think that they afford no ground for any different interpretation of the portion of the will here in question than as indicated above.

We think it clear that Carrie C. McVeigh took an absolute estate in the fund here in question; that the same was not legally chargeable with a trust in favor of her son. And it follows that the legacy is subject to the collateral inheritance tax.

For the reasons given above, the judgment should be reversed and the cause remanded with directions

to enter judgment in favor of relator for the amount of the tax in question. It is so ordered. *Reynolds, P. J.*, concurs; *Nortoni, J.*, being a member of the Board of Curators of the State University, is not sitting.