ARTHUR E. BLUMER v. JOHN F. GILLESPIE, Executor of the Last Will and Testament of LOUISE BLUMER, and JULIA SIEMEISTER, Defendants, GERMAN GENERAL PROTESTANT ORPHANS' ASSOCIATION, a Corporation, Appellant.—93 S. W. (2d) 939.

Division One, April 23, 1936.

*Lubke & Lubke* and *Otto O. Fickeissen* for appellant.

*Eagleton, Waechter, Yost, Elam & Clark* for respondent.

FRANK, J.—Action by Arthur E. Blumer to construe the will of his father, Esaias W. Blumer. The defendant are John F. Gillespie, executor of the last will and testament of Louise Blumer, Julia Siemeister and German General Protestant Orphans' Association. Defendant Louise Blumer was the wife of Esaias Blumer, and plaintiff is their son and only child. The German General Orphans' Association is the appellant.

The pertinent parts of the will of Esaias Blumer read as follows:

"1st. I will and direct that all my lawful debts and all my funeral and testamentary expenses be first paid.

"2nd. The rest and residue of my estate, real, personal and mixed, legal and equitable, wheresoever situated and whatsoever it may consist of, now or at the time of my death belonging, owing or coming to *be* I give, devise and bequeath to my wife, Louise Blumer. I have unquestioned faith that she will protect, educate and take care of our son, Arthur E., as I should have done had I lived. It is my wish that after my death she make a will bequeathing such of her real and personal estate, as she may inherit from me, to our son, Arthur E., upon her death. My idea and wish being that our son Arthur shall inherit what may remain of my estate after my wife's death."

Louise Blumer died testate after the death of her husband, Esaias Blumer. Her will provides as follows:

"Second: I give and bequeath to my son, Arthur E. Blumer, the sum of five dollars ($5.00).

"Third: I give and bequeath to Julie Siemeister, of 4146 Grove street, St. Louis, the sum of two thousand dollars ($2,000.00).

"Fourth: All of the rest, residue, and remainder of my property, real, personal, and mixed, I give, devise and bequeath to the German General Protestant Orphans Home, now located at 4447 Natural Bridge Avenue, in the City of St. Louis, Missouri."

The gist of this controversy may be thus stated. Defendant, John F. Gillespie, executor of the will of Louise Blumer, deceased, has in his possession the sum of $32,041.06 which he is holding as the assets of the estate of Louise Blumer. This property was acquired by the said Louise Blumer from the estate of her husband, Esaias Blumer, by the terms of his will above set out. Plaintiff contends that by the terms of his father's will, his mother, Louise Blumer, took a life estate only in said property with remainder absolutely to him, and for that reason his mother could not dispose of it by will. On the other hand, appellant contends that the will of Esaias Blumer bequeathed the absolute title to said property to his widow,

Louise Blumer, and since she disposed of such property by will, plaintiff has no interest therein except the sum of five dollars bequeathed to him by her will. The court below construed the will in controversy as giving to Louise Blumer a life estate only in the property with remainder absolutely to plaintiff, and ordered, adjudged and decreed that defendant, John F. Gillespie, executor of the will of said Louise Blumer, account to plaintiff for the amount of said property in the sum of $32,041.06, with interest thereon from September 18, 1931, to date, in the sum of $2,744.85, making a total of $34,785.91.

It appears by the will of Louise Blumer above set out, that she gave her son, the plaintiff, $5, Julia Siemeister $2000, and the remainder of the estate, she gave to German General Protestant Association. If by the terms of her husband's will, Louise Blumer took an absolute title to the property in question, she had a lawful right to dispose of it by will as she did do. On the other hand, if her husband's will gave her a life estate only in such property, with remainder to plaintiff absolutely, she could not dispose of it by will, and at her death it belonged to plaintiff.

It is hardly necessary to mention, and absolutely unnecessary to cite authorities to the effect that in construing a will the single aim and object is to arrive at the intent of the testator. In the search for that intention, the will should be viewed from its four corners, and all of its terms and provisions should be given a fair and reasonable interpretation. The first and last inquiry should be —what was the intention of the testator?

In construing the will in question, two rules of construction must be observed, (1) where a devise gives an absolute title, that title cannot be cut down by any subsequent provisions of the will unless the later provisions of the will are as clear and definite as the language of the clause which gives the absolute title, and (2) an absolute title cannot be cut down by a subsequent clause of the will which expresses a mere wish or desire as to the use and final disposition of the property, but leaves such use and final disposition to the full discretion of the devisee.

With these rules in mind, we approach the construction of the will in controversy.

The first paragraph of the will directs that deceased's lawful debts and funeral expenses be paid. The second paragraph provides:

"That the rest and residue of my estate, real, personal and mixed, legal and equitable, wheresoever situated and whatsoever it may consist of, now or at the time of my death belonging, owing or coming to *be* I give, devise and bequeath to my wife Louise Blumer."

There is no doubt but what this part of paragraph two of the will, standing alone, would give Louise Blumer an absolute title

to the real and personal property of the estate. But immediately following, and in the same paragraph, we find the following provision:

"I have unquestioned faith that she will protect, educate and take care of our son, Arthur E., as I should have done had I lived. It is my wish that after my death she make a will bequeathing such of her real and personal estate, as she may inherit from me, to our son, Arthur E., upon her death. My idea and wish being that our son, Arthur, shall inherit what may remain of my estate after my wife's death."

Appellant contends that the provision of paragraph two last above quoted merely expresses the wish or idea of the testator as to the disposition of the property after his wife's death, but does not will or command what shall be done in that regard, and for that reason it does not cut down the absolute title and estate given to the wife, Louise Blumer, in the first part of paragraph two of the will.

The mere fact that testator used the words "my wish" and "my idea and wish" in reference to the disposition of the property after his wife's death, does not necessarily mean that he was not expressing his will and intention in that regard, as distinguished from a mere wish or desire. That question depends entirely upon the sense in which he used the words, and that must be determined from a consideration of the will as a whole, and not from the abstract definition of such words, divorced from other provisions of the will. In the recent case of St. Louis Union Trust Company v. Little, 320 Mo. 1058, 10 S. W. (2d) 47, 52, we said:

"It matters not what words are used by the testator to express his intention, or in what popular or peculiar or technical language he expressed himself, the court will give effect to his intention as it may be gathered from the entire instrument. [Cross v. Hoch, 149 Mo. 325, 50 S. W. 786.]"

Again in Lemp v. Lemp, 264 Mo. 533, 175 S. W. 618, 620, we said:

"It is clear that the same words may have wholly different meanings when read in the light of the context. The expressions of a 'wish' may or may not create a trust; and so with 'desire' or similar words. The question in every case is whether they express merely the testator's wish or whether they express his will. A trust is created if it clearly appears that the words are used in an imperative sense."

A life estate need not be created by express words. It may be created by implication. This court has held "that a life estate may be created by implication, where, in language not ambiguous, the testator has manifested an intention to create such estate, even if it results in cutting down the absolute estate which would be created if the words first used stood alone." [Threlkeld v. Threlkeld,

238 Mo. 459, 467, 141 S. W. 1121.] An absolute title given by one provision of a will may be cut down by other provisions of the will if it clearly appears that it was the intention of the testator to create a life estate only in the first taker, and in determining that question the clause giving an absolute title, if it stood alone, and other provisions of the will which cut that title down should be construed together. [In re McClelland's Estate, 257 S. W. 808, 810.] When the intent of the testator can be clearly determined from a consideration of the will as a whole, then all technical rules that would stand in the way of its execution must be disregarded. Where, as in this case, the testator clearly expressed his wish or his idea, the question to be determined is whether or not from a fair consideration of all provisions of the will, "The testator intended to impose an obligation on the legatee to carry his wishes into effect, or . . . intended to leave it to the legatee to act on them or not, at his discretion." [Murphy v. Carlin, 113 Mo. 112, 1. c. 118, 20 S. W. 786.]

Applying the foregoing rules of law to the will here in controversy, we have no doubt that it was the intention of the testator to bequeath to his wife, Louise Blumer, a life estate only in the property in question, with remainder absolutely to his son, Arthur E. Blumer, plaintiff in this case.

After giving all of his estate to his wife, he then says, "It is my wish that after my death she make a will bequeathing such of her real and personal estate, as she may inherit from me, to our son, Arthur E., upon her death." It will be noted that this expressed wish does not leave it to the discretion and judgment of his wife to say what disposition shall be made of this property at her death, unless his use of the word "wish" does so. As heretofore seen, the word "wish" may express a mere desire or it may express an intention or command, depending upon the sense in which it is used. Suppose the testator had said, "It is my will that she give this property to our son upon her death." No one would dispute the fact that such an expression would have expressed the intention of the testator. I can see no difference between the expressions, "It is my wish that my wife do this or that" and "It is my will that my wife do this or that." The concluding sentence of paragraph two of the will says, "My idea and wish being that our son, Arthur, shall inherit what may remain of my estate after my wife's death." His expressed idea means his expressed intention. The word "idea" has been so defined. In Lewis v. Paull, 42 Ala. 136, 144, it is said:

"The word *idea* is frequently used as a substitute for the word intention, and when speaking of the avowed purpose or intention of a third person, careless talkers frequently employ the phrase, *his idea*."

A reading of the whole will convinces us that when the testator used the words "my wish" and "my idea and wish" he used them to express his intention and his will. When the will clearly shows the sense in which the testator used certain words, the courts should follow that instead of the technical definition given by lexicographers and courts. [Snow v. Ferrell, 320 Mo. 543, 8 S. W. (2d) 1008, 1016.]

Wills similar to the one in controversy here have been construed as giving the first taker a life estate only. In Lewis v. Pitman, 101 Mo. 281, 286, 14 S. W. 52, clause two of the will bequeathed to the testator's wife all of his personal property and a life estate in his real property. Clause four of the will provided as follows:

"It is my *desire* that after my wife's death all of my children shall share, and share alike, in the estate left by her, whether the same be realty or personalty; of course I refer in this clause to whatever she has remaining of that she acquired from me by this will. (Italics ours.)

It will be noted in above case that clause two of the will gave the wife an *absolute estate* in the personal property, and clause four stated that it was the *desire* of the testator that his children take the personal property remaining at the wife's death. The court held that the wife took a life estate in the personal property with remainder to the children.

In Murphy v. Carlin, 113 Mo. 112, 20 S. W. 786, the will there construed made an absolute gift of the personal property, and devised a fee in the real estate to testator's wife by clause five of the will. Clause six provided:

"Sixth: It is my *wish and desire* that my wife continue to provide for the care, comfort and education of Thomas Joseph Murphy, now aged nearly five years, who has been raised as a member of my family since his infancy, and to make a suitable provision for him in case of her death, providing that he continues to be a dutiful child to her and shows himself worthy of such consideration."

In above case we have a will which first gave all of testator's property to his wife, then expressed a *wish* and *desire* of the testator that she care for and educate the boy metioned, and make suitable provision for him in case of her death. The wife died without making any provision for the boy. In an action by the boy to enforce the bequest made for him he was permitted to recover. In so holding, the court among other things, said:

"The precatory words in this case are a positive and unequivocal expression of the wish and desire of the testator; and the fact that the whole estate is bequeathed absolutely and immediately before the precatory words are used, ought not in this, as they did

not in that case, prevent the trust from attaching—provided such was the intent of the testator."

Other cases to the same effect are—Burnet v. Burnet, 244 Mo. 491, 148 S. W. 872; Trigg v. Trigg, 192 S. W. 1011; Cook v. Higgins, 290 Mo. 402, 235 S. W. 807.

Appellant cites in support the contention that testator's wife took an absolute title to the property the following cases: Lemp v. Lemp, 264 Mo. 533, 175 S. W. 618; Sevier v. Woodson, 205 Mo. 202, 104 S. W. 1; Corby v. Corby, 85 Mo. 371; Balliett v. Veal, 140 Mo. 187, 41 S. W. 736; Estill v. Ballew, 26 S. W. (2d) 778; State ex rel. v. McVeigh, 181 Mo. App. 566, 164 S. W. 673.

In our judgment none of the cases cited support appellant's contention. For example, in the first case cited, Lemp v. Lemp, the will provided:

"I give, bequeath and devise to my wife, Julia Lemp, all my property, real and personal, or mixed, wheresoever situated or by whatsoever title held, absolutely.

"I make no gift here to my children . . . and I make no gift to my grandchild, Marian Lemp, having perfect confidence that my wife will, without any request on my part, and none such is here made, do best for them."

While the testator in the Lemp case expressed confidence in his wife that she would do the best for the children, he did not request her to do so, and expressly stated that no such request was made. He left that matter wholly to the judgment and discretion of his wife. A mere expression of confidence that the wife would do the best for the children, without any request that she do any particular thing for them, imposed no obligation upon her. In such a situation the absolute title to the property bequeathed to the wife was not cut down by the later provisions of the will. The distinction between the Lemp case and the case at bar is, that in the case at bar the will specifically requested—yes, commanded, that the wife give to the son all of the property remaining at her death. Under the authority of all the well-considered cases, the wife took a life estate in the property with remainder to the son absolutely. The other cases cited are as easily distinguishable from the case at bar as is the Lemp case. We invite the readers consideration of such cases without lengthening this opinion by a discussion of them.

Appellant contends the provision in the will that the testator's son "shall inherit what may remain of my estate after my wife's death" clearly indicates a power of disposition on the part of his wife, and, therefore, negatives the idea of a life estate with remainder over to the son.

We cannot agree with this contention. For reasons already stated, we are convinced that the wife took a life estate under the will.

If she had a superadded power of disposition, that would not convert the life estate into a fee. [Chapman v. Chapman, 336 Mo. 98, 77 S. W. (2d) 87, 90; Van Every v. McKay, 331 Mo. 355, 53 S. W. (2d) 873, 875.] It is, therefore, not necessary to determine whether she did or did not have the power of disposition.

Appellant contends that error was committed in permitting plaintiff to offer testimony as to the reason why his mother willed him only five dollars, and as to his mother's disagreement with him as to his marriage.

The admission of this evidence, if error, would not work a reversal of the case. In equity cases this court excludes from consideration evidence improperly admitted and reaches its judgment on the competent evidence offered. We need not cite authorities on this point.

Other questions are discussed in the briefs, but since what we have already said necessarily determines the case, we will not discuss other questions raised.

The judgment should be affirmed. It is so ordered. All concur.