MARION LEMP, A Minor, by IRENE VERDIN LANGAN, her Curatrix, Appellant, v. WILLIAM J. LEMP et al.

### Division One, April 1, 1915.

1. **WILL: Precatory Trust: Will or Wish?** Precatory words in a will, that is, words of expectation, hope, desire, recommendation, etc., owing to their context or the use of different kinds of words in other parts of the will, have been given different meanings by the courts, and even by the same court. Whether or not they are imperative and create a trust, or are a mere expression of a wish, must be determined from an examination of the whole will and an ascertainment of testator's intention. In every case the question arising from the use of such words as "wish" or "desire" or "recommend" or "entreat" or similar

words is whether they express merely the testator's wish or express his will. A trust is created if it clearly appears that the words were used in an imperative sense; but not otherwise. The intent of the testator is the thing to be ascertained, and in doing that the ordinary and usual rules of law applicable to the construction of wills are to be observed.

2. ———: ———: **Absolute Estate: Cut Down By Succeeding Words.** Where the will, after providing for the payment of testator's debts, said: "I give, bequeath and devise to my wife, Julia Lemp, all my property, real and personal or mixed, wheresoever situated or by whatsoever title held, absolutely," he created an absolute estate in his wife, in plain and unequivocal language, and a subsequent equivocal and indefinite clause did not cut down or modify that estate; and a subsequent clause, reading: "I make no gift here to my children . . . and I make no gift here to my grandchild . . . having perfect confidence that my wife will without any request on my part, and none such is here made, do best for them," even if admitted to express an intent to create a precatory trust, did not unequivocally do so, and was not as affirmatively strong as the preceding clause creating in the wife an absolute estate, and did not therefore convert that estate into such a trust.

3. ———: ———: **Intent: Gift: Trustee's Fees in Lieu of Bequest.** A trust estate is the subject of a gift; and where the testator gave all his property "absolutely" to his wife, and then added: "I make no gift here to my children" (naming them) "and I make no gift here to my grandchild" (naming the only child of a deceased son), "having perfect confidence that my wife will without any request on my part, and none such is here made, do best for them," he expressly excluded the idea of making a gift, by the will, to either children or grandchild; and that he did not intend the property devised to be held by the wife in trust for them is evident, not only from that fact, but from the fact that, if the will created a trust at all, it created one for his entire property and for all his children and grandchild and left the wife without anything whatever, and from the further fact that he expressed absolute confidence in her to dispose of the property justly and wisely. Nor does the fact that from her fees as trustee of the immense estate his wife would have a very large income, justify a holding that his intention was to deprive her of otherwise sharing in a property which had been built up by their joint labors; for such compensation (Woodson, C. J., in a separate opinion) is in no sense a bequest under a will.

4. ———: ———: **Violation By Trustee.** If the will gave all testator's property absolutely to his wife, she had the right to

dispose of it as seemed proper to her, and that issue having been determined in the affirmative what disposition she made of it is of no concern.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

AFFIRMED.

*Judson, Green & Henry, Campbell Allison* and *William A. Gardner* for appellant.

(1) The words in the third clause of the will of William J. Lemp are sufficient to create a trust in favor of the children and the grandchild therein mentioned. Murphy v. Carlin, 113 Mo. 112; Noe v. Kern, 93 Mo. 367; Bakert v. Bakert, 86 Mo. App. 83; Schmucker's Estate v. Reel, 61 Mo. 596; Colton v. Colton, 127 U. S. 300; Bohon v. Barrett, 79 Ky. 383; Warner v. Bates, 98 Mass. 278; Knox v. Knox, 59 Wis. 172; Jarman on Wills, p. 680. As between husband and wife, in order to create a trust in favor of their children, language need not be so strong or so explicit as would be necessary between strangers. Noe v. Kern, 93 Mo. 367; Murphy v. Carlin, 113 Mo. 112; Warner v. Bates, 98 Mass. 280. (2) Every clause of the will must be given effect, if possible, and to this end, if need be, words may be supplied or omitted and sentences transposed. Cox v. Jones, 229 Mo. 62; Small v. Field, 102 Mo. 104. (a) The word "gift" means "gift of my property." (b) The word "here" is superfluous and without meaning, unless used in apposition to making the gift of my property in a different manner—through their mother. (c) "Having perfect confidence" means "because I have perfect confidence." (d) "None such is hereby made" means "no request to do it is hereby made, because I know she will do it without any request on my part." (e) "That my wife will do" means "that my wife will do ([it] understood)," and referring to its antecedent, the word gift, it becomes clear

that this means, make a gift of my property to my children. (f) "Best for them" means "in a manner best for them." The words "faith," "confidence" and "reliance" are peculiarly apt and forceful in creating trusts, if used in the connection in which the words "perfect confidence" are found in this will. Noe v. Kern, 93 Mo. 367; Warner v. Bates, 98 Mass. 274; Portsmouth v. Shackford, 46 N. H. 423; Cockrill v. Armstrong, 31 Ark. 580; Bull v. Bull, 8 Conn. 47; Harrison v. Harrison, 2 Gratt. 1, 44 Am. Dec. 365; Blanchard v. Chapman, 22 Ill. App. 341. (3) William J. Lemp clearly explains that his "perfect confidence" that his wife will give the property to his children in such manner as will be best for them, is the only reason he does not give it to them "here." He also clearly explains that the reason he does not ask his wife to do it here, is because she will do it "without any request on my part." The testator having, himself, fully explained that he did not give directly and did not request his wife to give, only because he knew his children would get it from his wife without a request, the court cannot presume that he did not give directly or ask his wife to give because he wanted to disinherit his children. *Expressio unius exclusio alterius.* Murphy v. Carlin, 113 Mo. 120; Small v. Field, 102 Mo. 129; Reinders v. Koppelman, 94 Mo. 343. (4) "The prevailing doctrine is that no particular form of expression is required in order to create a binding and valid trust. Words of recommendation, request, entreaty, wish, or expectation will impose a binding duty upon the devisee by way of trust, provided the testator has pointed out with sufficient clearness and certainty, both the subject-matter and the object of the trust." Schmucker's Estate v. Reel, 61 Mo. 596; Noe v. Kern, 93 Mo. 370; Murphy v. Carlin, 113 Mo. 112; 1 Jarman on Wills, 680. Such words as "request," "entreat," "wish," "expect" or "hope" of themselves imply the possibility

that the donee will do otherwise, and are not of them-
selves necessarily imperative. On the contrary, such
words as "having perfect confidence," "full faith,"
"perfect reliance," etc., import the absence of the pos-
sibility in the mind of the testator that the donee will
do otherwise, and are of themselves imperative, and
when addressed by one spouse to the other, respecting
their natural children, and especially when made a
reason for the gift, are mandatory. (5) If the donor
had "perfect confidence" his wife would do it, it was
his will that she should do it. It was mandatory. In
considering this question it is to be remembered that
the devisee is the wife of the testator, between whom
it is not expected that commands should be expressed
in such forcible language as between strangers. Mur-
phy v. Carlin, 112 Mo. 119; Noe v. Kern, 93 Mo. 373;
Knox v. Knox, 59 Wis. 172; Erickson v. Wittard, 1 N.
H. 217; 1 Jarman on Wills, 680. (6) The devise or
gift of an absolute estate to Julia Lemp in the second
clause is controlled and limited by the precatory words
in the third clause which immediately follow, and Julia
Lemp is thereby made a trustee of said estate for the
benefit of the seven children and the grandchild, with
the right to use, during her lifetime, such part of the
income for her own support as may be necessary. Noe
v. Kern, 93 Mo. 372; Murphy v. Carlin, 113 Mo. 112;
Gibson v. Gibson, 239 Mo. 506. The absence of the
words "heirs and assigns forever," in the granting
clause of the will, leaves the character of the estate
devised to be determined from the subsequent language.
R. S. 1909, sec. 579. The character of the estate
devised to Julia Lemp in the granting clause of the will
in question is therefore clearly controlled and limited
by the precatory words in the third clause, which im-
mediately follow, and she is thereby made a trustee
of said estate for the benefit of the seven children and
the grandchild, with the right to use during her life-
time, such part of the income for her own enjoyment

as may be necessary. Noe v. Kern, 93 Mo. 367; Murphy v. Carlin, 113 Mo. 112. (7) While discretion in the donee to give or not to give will usually defeat the trust, a discretion as to the manner of giving, will not. Murphy v. Carlin, 112 Mo. 113; Noe v. Kern, 93 Mo. 367; Colton v. Colton, 127 U. S. 300; Erickson v. Wittard, 1 N. H. 230. While Julia Lemp is given, by the language of the third clause, full discretion as to the manner of giving this property to the children and the grandchild mentioned, and as to the time of giving it, and as to the character of restrictions to be placed upon its use or enjoyment by them, or any of them, yet no discretion is given her to withhold at her caprice the entire share of any one child or grandchild therein mentioned. Noe v. Kern, 93 Mo. 367; Colton v. Colton, 127 U. S. 300; Murphy v. Carlin, 113 Mo. 112; Warner v. Bates, 98 Mass. 278. (8) If the wife had the legal right to disinherit her granddaughter she also had the right to disinherit the other children. If she had this right her husband must have intended to disinherit all his children by his will. But the law presumes the testator intended to provide for his children, unless the contrary clearly appears. Noe v. Kern, 93 Mo. 373; 1 Beach on Trusts, sec. 69, p. 123; Lins v. Lonhart, 127 Mo. 281; Gay v. Gillilan, 92 Mo. 264. (9) Clearly there is sufficient certainty in the objects of this trust, because the seven children and the grandchild are therein expressly named and were intended to share said estate equally upon the death of Julia Lemp. There is also sufficient certainty in the subject of said trust, for it is clear that it was intended to include the entire estate of the testator. Harrison v. Harrison, 2 Gratt. 1, 44 Am. Dec. 365; Warner v. Bates, 98 Mass. 278. (10) That Mrs. Julia Lemp herself clearly understood that she, in making her last will, was merely carrying into effect the will of her deceased husband, and recognized that the children were taking the property from him and not from her is indicated

by the fact that in the second clause she provides that
her executors must deduct from the share of each child
the advancements made to them respectively by Wil-
liam J. Lemp in his lifetime; and also by the fact that
she did not attempt to divert any part thereof to any
charitable purpose or to make any gifts to servants or
to any other person except the seven children; and she
attempts to excuse herself for failing to comply with
his wishes respecting this appellant, Marion Lemp, by
falsely claiming that she had provided for her during
her lifetime.  And by the further fact that, in the exer-
cise of the discretion given her she gave three of the
children their shares outright and as to four of them
restricted their enjoyment by trusteeships and other-
wise as she deemed best for them, just as her hus-
band had told her to do.

*Charles F. Krone, Schnurmacher & Rassieur* and
*Edward C. Crow* for respondents.

(1)  The will must be construed according to the
intent of the testator, unless that intent runs counter
to an inflexible rule of law or of public policy. ''When
the intent of its maker is discovered, the will is solved.''
Burnet v. Burnet, 244 Mo. 497.   (2)  The will of Wil-
liam J. Lemp in clearest terms gives his wife an abso-
lute estate.  It is now sought to convert this into a life
estate to the widow, with remainder in trust to chil-
dren and grandchild, by the alleged precatory words
succeeding the devise and bequest in fee.  Without
questioning the power of a testator to cut down or
diminish a devise by subsequent clauses, in language
as clear and unequivocal as that creating the gift, yet
''it might truthfully be said that it is a settled rule of
property in this State, that when the words of a will,
at the beginning, clearly shows that it was the inten-
tion of the testator to devise the entire estate abso-
lutely to the first donee, then that estate will not be

cut down to a less estate, by subsequent ambiguous words found therein." Cornet v. Cornet, 248 Mo. 224; Sevier v. Woodson, 205 Mo. 214; Gibson v. Gibson, 239 Mo. 506. On the contrary, when a mere life estate is granted or an estate in general terms, not sufficient to create a fee, the estate in remainder will not be cut down, lessened or defeated, because added to the first estate is a power of disposition. The defeat of the remainder will be accomplished only by the exercise of the superadded power of disposition. Burnet v. Burnet, 244 Mo. 491; Lawless v. Kerns, 242 Mo. 392; Tisdale v. Prather, 210 Mo. 402. "And where an absolute estate or interest is in terms given (as here), precatory words which follow, are usually treated as expressions of wish, rather than of will, so that no trust is created." 40 Cyc. 1737; 22 Am. & Eng. Ency. Law, p. 1170; 25 Eng. Rul. Cas., p. 478. (4) A precatory trust is not to be inferred from mere expressions of hope, confidence or desire on the part of the testator; it must fairly appear from the will that he intended to create a legal duty in the donee and not merely a moral obligation; and when a testamentary trust is not expressed, none will be implied. Corby v. Corby, 85 Mo. 371; Hayes v. Hayes, 242 Mo. 155; Floyd v. Smith, 59 Fla. 485; Sturgis v. Paine, 146 Mass. 354; Rector v. Alcorn, 88 Miss. 788; Burnes v. Burnes, 70 C. C. A. 357, 137 Fed. 781. (5) And in determining whether expressions in a will are sufficient to create a precatory trust, it is necessary to ascertain from the whole context of the will, and the situation of the testator, whether he intended to impose an imperative obligation on his legatee to carry his wishes into effect; or whether, having expressed his wishes, he intended to leave it to the discretion of the legatee to act on them or not. In the latter case, no trust results. Hayes v. Hayes, 242 Mo. 155; Corby v. Corby, 85 Mo. 371; Snyder v. Toler, 179 Mo. App. 376; Van Duyne v. Van Duyne, 14 N. J. L. 397; Hess v. Singler, 114 Mass. 56; Sears v. Cunning-

ham, 122 Mass. 538.; Rose v. Porter, 141 Mass. 309;
Sale v. Thornberry, 86 Ky. 266; Post v. Moore, 181
N. Y. 15; Foose v. Whitmore, 82 N. Y. 405; Ellis v. Ellis,
15 Ala. 296; Spears v. Ligon, 59 Tex. 233; Mitchell v.
Mitchell, 143 Ind. 113; Rector v. Alcorn, 88 Miss. 788;
Lesesne v. Witte, 5 S. C. 450; Hunt v. Hunt, 11 Nev.
444; Greene v. Greene, 3 Ir. Eq. R. 90; Gilbert v. Cha-
pin, 19 Conn. 342; Burnes v. Burnes, 70 C. C. A. 357,
137 Fed. 795; McDuffie v. Montgomery, 128 Fed. 105;
Sale v. Moore, 1 Sim. 534; Bardswell v. Bardswell, 9
Sim. 319; Ellis v. Ellis, 44 L. J. Ch. 225; Macnab v.
Whitbread, 17 Beav. 299; Fox v. Fox, 27 Beav. 301;
In re Adams and The Kensington Vestry, 24 Ch. Div.
199; Oldfield v. Oldfield, 73 L. J. Ch. 433; Mussourie
Bank v. Raynor, 31 W. R. 17; 2 Story's Eq. Jur., sec.
1070; 1 Perry on Trusts & Trustees (6 Ed.), sec. 114;
Underhill's Law of Trusts & Trustees (7 Ed.), p. 24;
Lewin's Law of Trusts, pp. 156, 157. (6) The ab-
sence of explicit direction as to the *quantum* to be given,
or a vagueness in the designation of the proportions
which the supposed beneficiaries of the alleged trust
are to take, will be construed as a strong indication
that the testator did not intend to create a trust. 22
Am. & Eng. Ency. Law, pp. 1167-1168. (7) Where a
request is expressly negatived in terms (as here), no
trust will be inferred. Burnes v. Burnes, 70 C. C. A.
357, 137 Fed. 781.

GRAVES, P. J.—This is an action in equity where-
by it is sought to have the court declare a precatory
trust. Plaintiff is the only child of Frederick W. Lemp,
deceased. William J. Lemp, the father of the said
Frederick W. Lemp, died leaving the following will:

"I, William J. Lemp, hereby make, publish and
declare this as and for my last will and testament,
hereby revoking all previous wills. I direct the pay-
ment of my debts and the closing of administration on
my estate as rapidly as the law will permit.

"I give, bequeath and devise to my wife, Julia Lemp, all my property, real and personal or mixed, wheresoever situate or by whatsoever title held, absolutely.

"I make no gift here to my children, Annie L. Konta, William J. Lemp, Louis F. Lemp, Charles A. Lemp, Hilda L. Pabst, Edwin A. Lemp and Elsa J. Lemp, and I make no gift here to my grandchild, Marion Lemp, having perfect confidence that my wife will without any request on my part, and none such is here made, do best for them.

"I hereby appoint William J. Lemp, Jr., Louis F. Lemp and Charles A. Lemp and Edwin A. Lemp or either or any of them that may accept and qualify my executors or executor without bond.

"In witness whereof, I have hereunto set my hand this 1st day of February, 1904."

Frederick W. Lemp departed this life in 1901, and his father, William J. Lemp, died in February, 1904. In 1906, Julia Lemp, the widow of William J. Lemp, died leaving a will. In that will is found the following clause:

"4. As I have heretofore purchased from Irene Lemp, widow of Frederick W. Lemp, and from Marion Lemp, her minor daughter, acting by her curator, substantially all of the property held and coming to both from my deceased son, and inasmuch as, in consequence of the terms of said purchase, I deem the estate of the mother and child such as to reasonably secure to said Marion Lemp an adequate amount of property as one of my grandchildren, it is my will that neither the said Irene Lemp nor Marion Lemp shall receive any part of my property or of my residuary estate."

This clause of the Julia Lemp will is no doubt the mainspring of the present action. The petition in the case is quite lengthy and no good purpose would be served in setting it out in full. The crux of the case

will be found in the following excerpts from the petition. Paragraph four of the petition thus reads:

"Your petitioner further states that in and by the said foregoing last will and testament of the said William J. Lemp, deceased, all of the real estate and personal property owned by him at the time of his death was given, devised and bequeathed to Julia Lemp, who was his wife, in trust, for the purpose of being conveyed or transferred by her, the said Julia Lemp, to the persons therein named, to-wit: Annie L. Konta, William J. Lemp, Jr., Louis F. Lemp, Charles A. Lemp, Hilda L. Pabst, Edwin A. Lemp and Elsa J. Lemp (all of whom are children of said William J. Lemp and said Julia Lemp, his wife), and Marion Lemp, the plaintiff herein (who is the grandchild of the said William J. Lemp, deceased) and the said Julia Lemp, his wife, subject to the right of the said Julia Lemp to use and enjoy the income therefrom or such portions thereof as might be necessary during the natural life of said Julia Lemp."

Paragraphs 5 and 6 set out the will and matters material to the will of Julia Lemp. Paragraphs 7 and 8 thus read:

"That the said Julia Lemp, deceased, in and by her foregoing last will and testament pretended to carry out and execute the said trust imposed upon her by the terms and conditions of the said last will and testament of the said William J. Lemp, deceased, and in pretended pursuance thereof, she gave, devised and bequeathed the whole of said property so given, devised and bequeathed to her by the said last will and testament of the said William J. Lemp, deceased, to William Lemp, Jr., Annie L. Konta, Louis Lemp, Charles A. Lemp, Hilda L. Pabst, Edwin A. Lemp and Elsa J. Lemp, now by marriage to one Wright, Elsie J. Wright, giving and bequeathing to each of them a one-seventh part thereof, and placing upon the shares so given, devised and bequeathed to Annie L. Konta,

Edwin A. Lemp and Elsie J. Lemp, now Elsie J. Wright, such restrictions by way of trusteeship and otherwise, as in her judgment was best for them; but thereby giving, devising and bequeathing no part or parcel of said property so given and bequeathed to her as aforesaid to this plaintiff, Marion Lemp.

"Plaintiff further represents that in truth the said Julia Lemp, deceased, should have in compliance with the command of the said William J. Lemp, deceased, as expressed in his said last will and testament, divided all of said real estate and personal property so given, devised and bequeathed to her in trust, as aforesaid, into eight equal parts, and should have given, devised and bequeathed a one-eighth part thereof to each of the said persons mentioned in the said last will and testament of the said William J. Lemp, deceased, to-wit: One-eighth part thereof to the said William J. Lemp, Jr., one-eighth part thereof to the said Annie L. Konta, one-eighth part thereof to the said Louis Lemp, one-eighth part thereof to the said Charles A. Lemp, one-eighth part thereof to the said Hilda L. Pabst, one-eighth part thereof to the said Edwin A. Lemp, one-eighth part thereof to the said Elsie J. Lemp, now Elsie J. Wright, a one-eighth part thereof to Marion Lemp, the plaintiff herein, placing upon the shares of each such restrictions as in her judgment would have been best for them."

The prayer of the petition is as follows:

"Forasmuch therefor as the petitioner is without remedy save in equity, plaintiff prays that it may be adjudged and decreed by this court that all of the real estate and personal property, choses in action and other rights belonging to the said William J. Lemp, deceased, in his lifetime, and which were in the possession or under the control of the said Julia Lemp at the time of her death, be declared to be in trust for the persons named in the will of the said William J. Lemp, deceased, including this plaintiff, in equal

parts or shares; and that an accounting be had under the directions of this honorable court of all the property left by the said Julia Lemp, deceased, as well as the profits and gains received therefrom, and that said William J. Lemp, Jr., Annie L. Konta, Louis F. Lemp, Charles A. Lemp, Hilda L. Pabst, Edwin A. Lemp, Elsie J. Lemp, now Elsie J. Wright, William Lemp and Charles A. Lemp, Louis F. Lemp and Edwin A. Lemp, as executors of the last will and testament of William J. Lemp, deceased, and William J. Lemp, Charles A. Lemp and Edwin A. Lemp as executors of the last will and testament of Julia Lemp, deceased, and the said William J. Lemp and Charles A. Lemp as trustees for Annie L. Konta, and the said William J. Lemp and the said Charles A. Lemp as trustees for Edwin A. Lemp, and the said William J. Lemp and Charles A. Lemp as trustees for Elsie Lemp, now Elsie J. Wright, be declared to convey to the plaintiff a one-eighth part of the real estate and personal property received by them under the last will and testament of the said Julia Lemp, deceased, as well as the one-eighth part of all the profits derived therefrom, and that your petitioner may have such other and further relief as in equity is just.''

I. The use of precatory words in wills has been a source of annoyance to the courts, and, owing to the appearance of extremely harsh cases from time to time,

**Precatory Trust: Rules of Construction.** has occasioned some extreme views, thereby producing a contrariety of opinion to some extent. The same words have been given different meanings in the opinions. To be more explicit, given words in some wills have been held not to create a trust, and the same words in others have been held to create a trust. Words in one will have been held to be imperative, whilst the same words in another will have been held not to be imperative.

264Mo35

These divergences of opinion, however, can be accounted for in a large measure by the use of different kinds of words in other portions of the wills. The doctrine as applied to precatory words in a will is thus aptly expressed in 40 Cyc. 1734 et seq.:

"The question whether precatory words, that is, words of expectation, hope, desire, recommendation, etc., will operate to create a trust is purely one of definition, and where the will itself does not determine the sense in which the testator used them, is one for a lexicographer rather than a judge. If such words are used in their primary sense, it is obvious, or should be, that they can impose no obligation upon the first taker. If, however, the rest of the will shows that the words are really imperative, and that beneath the veil of courtesy there lurks a positive order, then the trust should be effectuated. In the nature of the thing, this is all the so-called 'law' that this question can involve. But these obvious facts have been overlooked. The courts have been eager to give unnatural and wrongful meanings to words whose significance is commonly well understood, and the result is a hopeless confusion in the decisions, and that utter absence of principle which inevitably follows the abandonment of right principle. However, it is said that, according to the earlier cases, when property is given absolutely to any person, and the same person, is, by the giver, who has power to command, recommended or entreated or wished to dispose of that property in favor of another, the recommendation, entreaty, or wish is held to create a trust, if the words are so used that, upon the whole, they ought to be construed as imperative, and if the subject-matter and the objects of the recommendation be certain. The more modern rule, however, is that, in order that a trust may arise from the use of precatory words, the court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to cre-

ate an express trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner. Applying this rule, it is clear that the same words may have wholly different meanings when read in the light of the context. Thus the expression of a 'wish' may or may not create a trust; and so with 'desire,' and similar words. The question in every case is whether they express merely the testator's wish, or whether they express his will. A trust is created if it clearly appears that the words were used in an imperative sense; but this only where the testator's desires can be ascertained with reasonable certainty, the subject and the object being clear. Sometimes the testator explicitly states the sense in which precatory words are used, and in such case of course his express intention governs. Where the testator shows that he knows how to create a trust by doing so in clear and apt words in one part of the will, the use of precatory words in another clause is strong evidence that no trust was there intended. And where an absolute estate or interest is in terms given, precatory words which follow are usually treated as expressions of wish rather than of will, so that no trust is created."

So that after all, the real question is to ascertain the intent of the testator, as such intent can be gathered from the four corners of the will. When the courts are called upon to declare what is sometimes denominated a "precatory trust" the real thing to be done is to find and declare the intent of the testator in making the will. Some opinions seem to grasp hold of the term "precatory trust" as if it were a distinct and sacred matter, surrounded, as it were, with a halo of mystery. The simple and single question involved in all cases is, what was the intent of the testator? Did he by the words used intend to create a trust? This intent must be determined under the ordinary and usual rules of law applicable to the construction of wills. For a court

to declare or hold that there is such a trust, is but for the court to say that it construes the intent of the testator to be the creation of a trust estate rather than an absolute estate. If by the language of the will there appears an intent to create a trust, then a trust should be declared. The intent of the testator is the pole star in the construction of all wills. We can therefore dismiss from our minds the hallowed ideas of "precatory trusts," and take up the will of William J. Lemp under the usual rules of construction, and try to determine from the will whether or not there was an intent to create a trust estate. This we shall do.

II. At the very outset we are confronted with this language: "I give, bequeath and devise to my wife, Julia Lemp, *all* my property, real and personal or mixed, wheresoever situated or by whatsoever title held, *absolutely.*" Shortening this expression of the will he gave *all* of his property to his wife *absolutely.* That this clause of the will created an absolute estate in the wife there can be no question. Can we say, under the usual rules of will construction, that any subsequent clause of this will cut down and modified the estate thus granted absolutely. We think not. In Sevier v. Woodson, 205 Mo. l. c. 214, we said:

Will: Unequivocal Absolute Estate: Cut Down by Subsequent Equivocal Clause.

"We take it to be well-settled law that where a certain estate is granted in plain and unequivocal language in one clause of a will, the same cannot be lessened or cut down by a subsequent clause of the will, unless the language used in such subsequent clause is as clear, plain and unequivocal as the language of the first grant."

So too in the later case of Gibson v. Gibson, 239 Mo. l. c. 506, we said:

"In what we have above expressed we do not wish to be understood as holding that what would other-

wise be a fee in the first taker can be cut down to a less estate by ambiguous words, or words not as clear and strong as those in the devise to the first taker."

There is but one subsequent clause to be examined in determining whether or not the absolute estate created by the first clause, supra, has been cut down or reduced. Leaving out the names of the parties mentioned in this clause, it reads: "I make no gift here to my children, . . . and I make no gift here to my grandchild, . . . having perfect confidence that my wife will *without any request* on my part, *and none such is here made,* do best for them."

If it was the intent to create a trust by this clause of the will, and thereby cut down the absolute estate granted in the first clause, do the words used measure up to the standard prescribed by the books? The question of real intent we discuss later, but at this point, it might be conceded that the purpose of the testator was to cut down the absolute estate, yet can we say he has so cut it down under the usual rule for the construction of wills, which we have quoted, supra? We say not. The language used in this last clause does not measure up to the standard fixed by the rules. The language used in this subsequent clause is not "as clear, plain and unequivocal as the language of the grant," and for that reason is not sufficient in law to cut down, modify or change the absolute estate created by the first clause. To use the words of SHERWOOD, J., in Small v. Field, 102 Mo. l. c. 127, the absolute estate created by the first clause of this will has not been cut down nor qualified "by words as affirmatively strong as those which conveyed the estate to her."

From this angle of the law it is clear that this will granted to Mrs. Lemp an absolute estate, and that no other part of the will is sufficient in law to cut down or reduce that estate. We take next the intent of the testator.

III. Was there ever intent upon the part of William J. Lemp to create a trust estate? We think not. A trust estate is the subject of a gift. He expressly states in the will: "I make no gift here to my children" and "I make no gift here to my grandchild." Clearly the word "here" means in this will. It could refer to nothing else. It might be said that he thereby indicated that he had previously made gifts, and it might be further said that he might have had in mind future gifts to be made before the will became effective. To my mind these words clearly show that he was not aiming to create either absolute or trust estates, so far as his children or grandchild, were concerned, by this will. Had it been his purpose to give them his property in the shape of a trust estate, he would never have said, "I make no gift here." The use of these expressions in the will show that he was not trying or intending to give them an interest in his property, either absolutely or conditionally, in trust. When the explicit language of this second clause is taken in connection with the plain, direct, positive and unqualified words of the first clause, it must be held that there was no intent to convey by the will any interest in his property to his children or grandchild. It is true that he expresses confidence in his wife and says that she "will without request on my part . . . do best for them," but he saw fit to put all matters at rest, as to his dictation of what she should do, by placing in the will, where the stars above appear, the phrase "and none such is here made." This clause following the words "request on my part" is a direct statement to the effect that he does not even request the wife to make any particular disposition of her own property—for such it would become under the terms of the will.

So that when we consider this will in its breadth and length—from all of its four corners—there are no words in it tending to show an intent upon the part

*Will: Testator's Intent.*

of the testator to create a trust in favor of his children and grandchild. Every earmark of the instrument is against such construction. Let us review for a moment: (1) we have a positive absolute estate given the wife; (2) we have the express declaration that he was not giving anything to the children or grandchild in the will, and (3) an express recognition of the estate being absolute in the wife by the testator saying that he would not even suggest to, or request of, the wife any definite division of her own property, when she came to dispose of it. Taken as a whole, the will fails to show an intent to give anything to any person save to his wife. It does express absolute confidence in her, but such an expression does not, under the other language of this will, tend to show an intent to create a trust estate.

But going further to the will as a whole for the purpose of determining the intent of the testator, let us see the ridiculous attitude the testator would be placed in by the contention of plaintiff. If this will creates a trust estate at all, it put every dollar's worth of property of which testator died seized into that trust estate. The will undertakes to and does dispose of the whole estate, so that if a trust was intended for the benefit of the children and grandchild, it would make them beneficiaries of the entire estate, without a single property provision for the wife. It is not reasonable to think that a man who had expressed such a confidence in his wife intended to leave no actual property to her, or property for her use. It will not do to say that he intended her legal fees as trustee to be her part of his vast estate. Men with the implicit confidence in the wife, as we find expressed in this will, are not prone to cut off that wife without a dollar which she could point to as her own. If the contention of the plaintiff is correct as to the intention of William J. Lemp, then he has done this almost unthinkable thing. He has left this wife, who enjoyed that confidence,

without a dollar, save what might be gleaned by way of fees for executing a trust. When all the language of this will, precatory words and others, is considered it cannot be said that there appears any intent to create a trust estate in the children and grandchild. Had he had such an intent he could have found apt words to have expressed it, but such apt words are not in this will. We see no need of going further. A discussion of what similar words mean, as used in other wills, can add but little light, because in each the words have different settings when the whole instrument is read.

Nor does the disposition made of the property by the wife deserve comment. If it passed to her by the will, as we hold that it did, she had the right to dispose of it as to her seemed proper. If her action in so disposing of it would have tended to shock the confidence of the husband, had he been living, it would not change the terms of his grant in the instrument which gave her title. Plaintiff's petition stated no cause of action, and the action of the trial court was right.

Let the judgment be affirmed. All concur; *Bond, J.,* in the result, and *Woodson, C. J.,* in a separate opinion.

WOODSON, C. J. (concurring).—Upon the argument of this case I had grave doubts as to the correctness of the conclusions reached by the learned trial court, but after a careful investigation of the authorities relied upon by counsel for each party, I have reached the conclusion that the trial court properly disposed of the case.

There is one question Mr. Schnurmacher, counsel for defendants, asked during oral argument, that cannot, in my opinion, be intelligently answered, except in favor of the maintenance of the will; which was substantially as follows: Why should Mr. Lemp have disposed of his entire estate without having made provision for his wife, in whom he had implicit confidence,

as is incontrovertibly shown by the will itself, making her the executrix thereof, without bond, and with the power to dispose of the same as she deemed best?

Mrs. Lemp, like most good women, evidently was a power of strength in the assistance of her husband in the accumulation of this vast estate, worth more than ten million dollars—the result of their joint labor.

Would a man of ordinary intelligence, with due regard for his helpmate, the wife of his bosom, intentionally and cold-bloodedly disinherit her under these circumstances, and at the same time bestow upon her the unlimited power to dispose of this vast estate as she deemed proper? The answer, it seems to me, should be: Unquestionably no. And this answer cannot be intelligently refuted by the suggestion of counsel that the fees due her under the law, for administrating the estate, would be a princely fortune of themselves, and would forever keep the wolf from her door.

That may be true, and doubtless is true, yet that fortune would not come from the fund of their joint labors, but as compensation for her services to be rendered in the administration of the estate, in the same sense that any stranger would be entitled to fees for similar services. Such compensation is in no sense a bequest under a will. Moreover, Mrs. Lemp was quite an elderly lady, and suppose, as an incident thereto she should have become incapacitated to administer the estate, then where would her fortune have been? It does not require a wise man to see the fallacy of such an argument. It is based upon the same ground that people count chickens before they are hatched and dispose of them before they are fryers. In other words, "There is many a slip between the cup and the lip."

But upon the contrary, according to the plain language of the will, Mrs. Lemp was amply provided for, and that, too, with no contingency attached or doubt lurking in the use of ambiguous words.

The only doubt shadowing the entire will is that a man of the great intellect and almost unlimited business capacity, as the record in this case shows Mr. Lemp to have possessed, should have given to his wife the power to disinherit a grandchild, when the means were ample for all.

The books are full of cases where men, and *strong men* too, have disinherited not only their grandchildren, but the children of their own blood and flesh. Whether or not the doctrine announced in those cases is wise and conducive to good government is not a matter addressed to the judiciary, but is clearly embraced within the prerogative of the Legislature. This court can no more invade the field of the Legislature than can the Legislature invade the province of the judiciary. The judiciary should declare the laws as they exist and not enact them. If we apply this well-known rule of judicial procedure, nothing remains for this court to do, except to give full force and effect to the will, as did the circuit court.

For the reasons here expressed, as well as those stated in the opinion by my learned associate, I fully concur in his opinion.