HON. PIERPOINT ISHAM, } ASSISTANT JUDGES.
HON. MILO L. BENNETT, }

---

MARTIN V. HAYES AND OTHERS *v.* B. DAVENPORT, EXR. OF N. JACKSON.

*Appeal from an order of the Probate Court.*

Where the testator, in the third and last codicil to his will, gave to four grand-children, (naming them) twenty-five dollars each, and said "to be in full of all "and for all other provisions by me made for them in any will or codicil by me "made, hereby revoking all other provisions by me heretofore made for said "children," *it was held*, that the testator intends this to be all the provision which shall be made for them, out of his estate.

THIS was an appeal from an allowance of the executor's account, and an order of distribution by the Probate Court. So far as the allowance of the executor's account is concerned, the appeal, by agreement of parties, is withdrawn, and the decree of the Probate Court is to be affirmed.

The testator made his will on the 18th day of December, A. D. 1839 ; and it is admitted, that the same, with the codicils thereto annexed, executed respectively on the 21st day of February, 1843, the 8th day of January, 1848, and the 24th day of April, 1848, were duly proved by the probate court, and that Barzillai Davenport was duly appointed, and is the legal, acting executor of said will and codicils.

It is also admitted, that at the time of the execution of said will, the children of the testator, then living, were Nathan Jackson, Polly Chatterton, and Abigail Hayes ; and that he then had one grand-child living named Harriet Hayes, the daughter of Hannah Hayes deceased : that at the time of the making of the first codicil, Abigail Hayes was dead, and that her children and legal representatives then living were Martin V. Hayes, Nathan J. Hayes, and Abigail Hayes : and that the heirs and legal representatives of said testator are his children John Jackson, Nathan Jackson, and Polly Chatterton, and his grand-children Martin V. Hayes, Nathan J. Hayes, Abigail Hayes, and Harriet Hayes.

By his will, the testator gave to his wife, Lydia Jackson, for life, the use of his home-place and the interest of a note which he held against one Goodell. To his daughter Polly, and her heirs, in addition to furniture which she had received at the time of, and subsequent to her marriage, estimated at $400, and a $475 note, which she held against him, he gave $100. To his son Nathan, he also gave the same sum in addition to a note for $300, which he held against said son, and $700, paid for him to one Hendee. The same sum he also gave to his daughter Abigail, and the heirs of her body, in addition to $300 worth of furniture received at the time of her marriage, and a $300 note on interest, "and given some nine or ten years ago," which she held against him. To his grand-daughter, Harriet Hayes, in addition to $300 worth of furniture received by her mother, he gave $500. To his son John, in addition to $700 worth of land before given him, he gave $400. And the testator directed, that if he should leave any real estate, beside his home-place, the use of which he had willed to his wife for life, his executor should sell the same for cash and divide the avails of such sale "between and among my children as above named." He also directed, that after the death of his wife, his executor should sell his home-place for cash, and that the sum thus

realized, together with the avails of the Goodell note, "be divided between the heirs above named, in proportion and according to the rates herein before stated."

In the first codicil annexed to said will, after mentioning the death of his wife and his daughter Abigail, the testator gave to his grand-children, Martin V. Hayes, Nathan J. Hayes, and Abigail Hayes, children of said Abigail, " the same, and all the same property which I had before bequeathed to my said daughter in her life time, to be equally divided between them." And to his granddaughter Harriet Hayes, he bequeathed the sum of $100, in lieu of the $500 given her by his will ; " the said Harriet having " boarded with me, and attended school at Brandon, and for other " considerations, I make this alteration in regard to said Harriet." And after making some further alteration in his will, and some further bequests, not material to be stated, he concluded as follows : " And the residue and remainder of my estate to be disposed of, in accordance with the laws of this State."

The second codicil contains nothing material to the point in dispute.

In the third codicil to said will, after reciting that he had given a note to Ahaz Hayes, who married the testator's daughter, Hannah, for his first wife, and his daughter, Abigail, for his second wife, and who had by his first wife two children, one only of whom was then living, and by his second three children, and that said note had been on interest some sixteen or seventeen years ; said testator gave to his grand-children Martin V. Hayes, Nathan J. Hayes, Abigail Hayes, and Harriet Hayes, $25 each, " to be in " full of all, and for all other provisions by me made for them, in " any will or codicil by me made, hereby revoking all other pro- " visions by me heretofore made for said children."

The Probate Court ordered and decreed, that the executor should pay to the several legatees the sums to which they were respectively entitled under the said will and codicils,—including $25 each, to Martin V., Nathan J., Abigail, and Harriet Hayes,—and that the residue and remainder of said estate be assigned, in equal shares, to Polly Chatterton, Nathan and John Jackson, children of said deceased, to wit : to each of them one equal third part of the residue of said estate forever. From this decree the said Martin V., Nathan J., Abigail, and Harriet Hayes appealed.

The County Court, December Term, 1851, PIERPOINT, J., presiding,—affirmed the decree of the Probate Court.

Exceptions by appellants.

*Barber & Bushnell* for appellants.

We claim that the said Harriet Hayes is entitled to receive out of the estate of said deceased, $25, and one fifth part of the said residuum of his estate.

That the said Martin V. and Nathan J. are entitled to receive $25,00 each, and together one fifth part of the residuum.

The intent of the testator is to be followed, but it is to be gathered from the will itself, and from the whole will; and such construction must be given as to make all parts stand, if possible. *Dawes* v. *Swan*, 4 Mass. 208. *Persons* v. *Winslow*, 6 Mass. 149.

One of two constructions must prevail.

Either that these grand-children shall receive no more than $25 out of his estate :

Or that the $25 shall be in full of all the *specific* legacies he has before given them.

This depends upon what construction shall be given to the term "*provision by me made for them.*"

We say this must refer to the sums he has provided they shall receive out of his estate *in nomino*, and not to the direction that the residue shall be disposed of according to the laws of this State.

In the previous codicil, the testator having left the residue of his estate to be divided according to the laws of the State, the term "provision" could not be construed as referring to what the law would give them, but to the particular bequests he had made to them previously. The direction given to divide the residue according to the laws of the State, gave them nothing certain—the laws might be changed so that they would be cut off.

Even a residuary legatee cannot be said to have a "provision" made for him. If the estate is exhausted by the specific legacies, he gets nothing. If it is not, he gets something. A "provision" must be construed as a specific devise, or bequest, by which the person provided for is entitled to receive something out of the estate.

Suppose the clause of the codicil of Feb. 21st, 1843, relating to

the division of the surplus, had been left out, the disposition of the surplus would have been the same ; if left out, it could not certainly be said, that the will made any provision except by specific legacies.

If this construction is not given to that term in the will, the court, in order to sustain the decree of the Probate Court, must not only treat the language of the last codicil as annulling the previous disposition as to the residue—but, as inserting a specific direction in the will that the residue of the estate shall be divided *among the other three heirs.* This would be adding a clause to the *will* by implication merely. It is treating a direction as *actually in* the will, upon a conjecture that the testator would have put it there, if he had written out what was in his mind. The duty of the court is to construe what he has said, and not to imagine what he might have said.

The disposal of an estate in accordance with the laws of this State, *is no will.* 7 Bac. Ab. 342. Styles, 148.

If it should be considered as annulling the direction as to the residue, so that it cannot be followed in the terms of the will, then the will ceases to operate upon it, and it must go to the heirs-at-law. The heir-at-law is not to be disinherited unless such be the manifest intention of the testator. 5. Pick. 528. *Hayden* v. *Stoughton.*

To divide the residue among the *three* heirs, as was done below, is to make implied legacies to them. Implied legacies are *not* to be supported unless the testator's interest is explicit to produce that result. *Grant* v. *Hapgood,* 13. Pick, 159.

If the construction for which we contend be given to the will, all parts of the will can stand together. If the construction for which they contend is adopted, the directions in relation to the residue must be rejected, for giving the residue to *three* is not dividing it equally among five. If this direction is rejected, the residue is undisposed of by the will, and goes to the heirs.

*Briggs & Conant* for executor.

No direct authority can be found upon the question raised in this case.

The will and codicils are to be taken together as forming one instrument.

If contradictory, the last codicil is to govern. *Bradstreet* v. *Clark,* 12 Wend. 602. *Petters* v. *Petters,* 4 McCord 151.

Hayes et al. *v.* Davenport, Exr.

In the construction of a *will*, the intention of the testator is admitted to be the polar star by which the courts must steer. 4 Kent 537.

The intention of the testator is the first great object of inquiry. And this intention must be collected from the whole will. *Richardson & wife* v. *Noyes*, et. al. 2 Mass. 56. *Crocker* v. *Crocker*, 11 Pick. 257. *Lamb* v. *Lamb*, 11 Pick. 475.

The will and codicils in question are very unskilfully and incoherently drawn, and to undertake to give them a construction by technical or established rules would no doubt defeat the intention of the testator.

It is the evident intention of the testator to dispose of all his property by *will*.

The construction of this clause in the codicil is, that his children and grand-children should take the property, after the payment of the legacy, in equal proportion, in lieu of the rule established in the will, or it has no meaning, and is thrown in for ornament.

The disposal of an estate in accordance with the laws of this state, *is no will.* 7 Ba. Ab. 342. *Styles, 148.*

The testator gives his reasons for making an alteration in his will, having given his note to the father of his grand-children, and there being a large amount of interest on it.

He gives to his grand-children, Harriet, Abigail, Martin and Nathan J., twenty-five dollars each ; " which is to be in full of all " and for all other provisions by me made for them, in any will or " codicil by me heretofore made for said children."

It is very apparent, that the testator intended that the legacies in this codicil, specified to his grand-children, should be all he intended they should have out of his property. And that his children, Polly Chatterton, Nathan Jackson and John Jackson, should have the residue of his estate.

A different construction would lead to the absurdity that the testator disposed of all his property by will, yet by a construction of his codicil, he revoked such disposition as to all, excepting some legacies of minor importance. If the property is disposed of by the *will*, and is not taken as intestate property, the language of the last codicil plainly and explicitly excludes the grand-children from any property under the will, besides the legacies.

The opinion of the court was delivered by

REDFIELD, Ch. J.   The only question in the present case is whether the will of the testator excludes the appellants from any participation in the residue of the estate, after paying the specific legacies.   It is not perhaps easy to conjecture, nor is it necessary to know of any sufficient or probable reason for excluding these representatives of two of the testator's deceased children, from all participation in the residue of the estate.   Many wills are made upon mere caprice.   They are not intended to proceed upon any principle of equality.   And in other cases, where sufficient reasons exist for a departure from the rules of equality, it is not apparent, upon the face of the will, and is not required to be made thus apparent.

The very right to make a will, supposes it may be done in such terms, and for such reasons, as are satisfactory to the mind of the testator, and without stating such reasons.   The only legitimate inquiry in such case is, perhaps, what is the intention of the testator, as gathered from the terms of the will, construed, as other contracts may properly be, with reference to the subject matter, and attending circumstances.

And in this view, it seems to us very difficult to say, that the testator, from the terms used, could have intended to have the appellants have any portion of his estate, above the sums specified, unless we can fairly conclude, that he intended to have and supposed he had left a portion of his estate, not disposed of by will.

But the terms made use of in the codicil of 1843, show conclusively, that it must have been the purpose of the testator to direct the disposition of all his estate, in the will.   This disposition of the residuary property is no where controlled in the subsequent codicils.   And it does not seem to us sufficient to justify the court, in treating it as a mere nullity in the mind of the testator, because it does not alter the distribution of the property, from what the law would have made, or from the will.   To the mind of the testator it would show the disposition, *by will*, of all his estate.

When the testator says, that the provision in the third codicil shall be " in full of all, and for all other provisions by me made for them in any will, or codicil, by me made," we must conclude, that he intends this to be all the provision which shall be made for them, out of his estate.   This seems to be the natural and neces-

sary construction of the will, notwithstanding the inclination, which the mind naturally feels, to let in the appellants to a share in the distribution of the residue of the estate. It is possible such might have been the purpose of the testator ; but we think there is nothing in the will, or the case, to render it legally probable that such was his purpose.

The judgment of the County Court is therefore affirmed, and must be certified, by the clerk, to the Probate Court.