WILLIAM D. SNOW ET AL., Appellants, v. MARY DOWNING FERRIL.—
8 S. W. (2d) 1008.

Division One, July 3, 1928.

544

*Robison & Robison, Thomas D. Williams* and *Perry S. Rader* for appellants.

*Hewitt & Hewitt* and *Foristel, Mudd, Blair & Habenicht* for respondent.

LINDSAY, C.—This is a suit to construe the will of Lucinda R. King, a widow who died on October 29, 1922, at the age of eighty-seven years, leaving no children, and no direct descendants. Plaintiff, William D. Snow, is the executor of the will, and the other plaintiffs, fifty-seven in number, are nephews and nieces, or the children of deceased nephews and nieces of the testatrix.

Mary Downing Ferril, deceased, a niece of the testatrix, was the sole original defendant, but died pending the suit and is now represented by respondent, George C. Stafford, her administrator.

The will, after many bequests to nephews and nieces, or their children, contains a residuary clause, which by its terms bequeaths the remainder of the estate to "the nephews and nieces of the first degree, share and share alike." The more direct question on appeal is, whether under the terms of the bequests to legatees other than Mary Downing Ferril, those legatees took only the special bequests, and she, a niece of the first degree, took the whole of the residuary estate, as the trial court found, or, whether the residue of the estate goes to all the nephews and nieces of the first degree surviving, and the heirs of those deceased.

The original will was executed on May 24, 1910, and two codicils were added later. In 1910, the testatrix had one sister living, Rebecca Downing, the mother of eleven children then living, one of whom was Mary Downing, afterward Ferril. The testatrix mentions in the will three deceased brothers, Hiram, William and John Litzenberg, and two deceased sisters, Mary Addleman and Cynthia Shearer, all of whom left children and grandchildren. Certain of the plaintiff's grandnephews and grandnieces claim an interest in the residuary estate, as heirs of their deceased parents, and certain others of the grandnephews and grandnieces do not claim by virtue of the terms of the residuary clause. The items of the original will are as follows:

"1. I hereby nominate and appoint William A. Wilson and William D. Snow executors of this my last will and testament, reposing confidence in their integrity and business ability I direct and au-

thorize them to execute this will and administer my estate without bond or security.

"2. I direct my said executors to pay all my just debts, if any, my funeral expenses, and the expenses of administering my estate, as soon after my demise as may be practicable.

"3. Should my said executors, or either of them, or their successors be required to give bond, I direct that the expenses and the costs thereof be paid out of my estate; and should any part of my estate be subject to a collateral inheritance tax, I order and direct my executors to pay said tax out of my residuary estate, so that each legatee shall receive his or her full legacy, and that the same be not diminished by said tax.

"4. I authorize and direct my said executors and their successors to sell all my real estate and perishable property, and execute and deliver to the purchaser or purchasers thereof such deeds or other instruments of conveyance as may be necessary. They shall sell the same at either private or public sale for cash in hand, as they may deem to be to the best advantage to my estate; and the matter of selling my household goods and furniture I direct that my relatives shall be given preference over other bidders on such articles as my said relatives may desire to purchase.

"5. Should either of my said executors fail or refuse to qualify, I direct that the other shall act as sole executor.

"6. I desire and direct that my remains be interred beside those of my beloved husband in our lot in the Old School Presbyterian Cemetery situated in the northwest corner of the northwest quarter of Section No. Twenty-two (22), in Township Fifty-seven (57), of Range Thirty-two (32), in Clinton County, Missouri.

"7. I hereby bequeath to William D. Snow, and to his successors, in trust, the sum of one thousand dollars to be invested in stocks or bonds, or loaned on prime real estate security, and the income therefrom to be used in keeping and maintaining in good repair our cemetery lot mentioned in item 6 hereof, and the monument thereon and all improvements that may be placed thereon during my lifetime in good repair; and the remainder, after paying the expenses of this trust, shall be paid annually, by said trustee to the trustees of said cemetery and be by them used in keeping said cemetery and the improvements thereon in good condition.

"8. I give and bequeath to my sister, Rebecca Downing, the sum of three thousand dollars, in cash, as her full share of my estate, and I request her to distribute and divide the same equally among her following named children, viz: Strother Downing, Eliza Downing, Mary Downing, Simeon Downing, William Downing, Charles Downing, Andrew Downing, Flora Downing and Galen Downing.

"9. I give and bequeath to my niece, Rebecca Hill, daughter of Rebecca Downing, the sum of one thousand dollars in cash as her full share of my estate.

"10. I give and bequeath to the children of my sister, Mary Addleman, deceased, the following sums in cash as their full share of my estate, viz: To Adam Addleman, two hundred dollars; to Rebecca Ann Addleman, two hundred dollars; to Brison Addleman, three hundred dollars; to Albert Addleman, three hundred dollers; to Lloyd Addleman, one thousand dollars; and to John Addleman, one thousand dollars.

11. I give and bequeath to Belle Downing, daughter of my sister, Rebecca Downing the sum of seven hundred dollars in cash as her full share of my estate.

"12. I give and bequeath to the children of my deceased sister, Cynthia Shearer the following sums in cash as their full share of my estate, viz: To Christiana Henderson, one thousand dollars; to William J. Shearer, three hundred dollars; to John D. Shearer, three hundred dollars; to Harriet Nattinham, five hundred dollars; to Sarah A. Ginn, five hundred dollars; and to Christiana Henderson, in trust for the use and benefit of Susan R. Shearer, the sum of four hundred dollars.

"13. I give and bequeath unto the children of my deceased brother, Hiram Litzenberg, the following sums in cash as their full share of my estate, viz: To Alexander Litzenberg, five hundred dollars; to Martha Jane Brown, the sum of five hundred dollars; to Harriet W. Veach the sum of five hundred dollars, and to Emeline P. Preston, the sum of five hundred dollars.

"14. I give and bequeath to the children of my deceased brother, William Litzenberg, the following sums in cash as their full share of my estate, viz: To Mary Ann Sutfin, seven hundred dollars; to Laura Thomas Beauchamp the sum of four hundred dollars; and to Arthur Miller Litzenberg, the sum of four hundred dollars.

"15. I give and bequeath to my said executors the sum of two thousand dollars, in trust for the use and benefit of my nephew Theodore Litzenberg; and I direct that they invest the same in a piece of real estate as a home for my said nephew and his family, the same to be selected by the said Theodore Litzenberg; and my said executors shall pay for and cause the title to be conveyed to the said Theodore Litzenberg and his heirs, without power of sale or mortgage to him or them during the life of the said Theodore Litzenberg. This bequest to be in full of his share in my estate.

"16. I give and bequeath to George H. Litzenberg, a son of my deceased brother, John Litzenberg, the sum of five hundred dollars in cash in full of his share in my estate.

"17. I give and bequeath to the children of my deceased grand-niece, Amanda Stigall, the following sum in cash as their full share of my estate, viz: To Louis V. Stigall, the sum of eight hundred dollars, and to Ernest E. Stigall, the sum of two hundred dollars.

"18. I give and bequeath to William A. Wilson, my nephew, the sum of one thousand five hundred dollars in cash.

"19. I give and bequeath to William Litzenberg, a son of my deceased nephew, William Litzenberg, the sum of four hundred dollars in cash as his full share of my estate.

"20. I give and bequeath to George Litzenberg, a son of my deceased nephew, William Litzenberg, the sum of two hundred dollars, in cash as his full share of my estate.

"21. I give and bequeath to Frank Litzenberg, a son of my deceased nephew, William Litzenberg, the sum of one hundred dollars, in full of his share of my estate.

"22. I give and bequeath to my friend, Mrs. Amanda B. Holman, the sum of two hundred dollars in cash.

"23. I give and bequeath the residue and remainder of my estate to my nephews and nieces of the first degree, share and share alike."

On the 22d day of July, 1918, the testatrix executed Codicil No. One as follows:

### "Codicil No. One.

"1. Whereas, my sister, Rebecca Downing, and my niece, Belle Downing, are now deceased, having departed this life since the execution of my original last will and testament of date May 24, A. D. 1910; I now, therefore, declare items Nos. 8 and 11 of said last will and testament null and void, and I direct that they be for naught held; and in lieu thereof, I now give and bequeath unto Strather Downing, Charles Downing, Eliza Downing, Simeon Downing, William Downing, Andrew Downing, Flora Downing and Galen Downing, each the sum of three hundred dollars as their full share of my estate.

"2. Christiana Henderson, daughter of my deceased sister, Cynthia Shearer, and mentioned in item No. 12 of my said last will and testament is now deceased, and I now, therefore, declare said item No. 12 null and void and of no effect, and in lieu thereof, I give and bequeath unto the children of my said deceased sister, Cynthia Shearer, the following sums in cash as their full share of my estate, viz: William J. Shearer, four hundred and fifty dollars, John D. Shearer, four hundred and fifty dollars, Harriet Nattinham, seven hundred and fifty, Sarah A. Ginn seven hundred and fifty dollars, and Susan R. Shearer, six hundred dollars, as their full share of my estate.

"3. I now declare item No. 15 of said last will and testament null and void, and of no effect, and in lieu thereof, I now give and

bequeath to my nephew, Theodore Litzenberg, the sum of four thousand two hundred ($4200) dollars in cash as his full share of my estate.

"4. I now declare item No. 18 of said last will and testament null and void, and of no effect, and in lieu thereof, I now give and bequeath unto my nephew, William A. Wilson, the sum of four thousand ($4000) dollars in cash.

"5. I now declare Item No. 19 of my last will and testament null and void and of no effect, and in lieu thereof, I now give and bequeath unto William Litzenberg, a son of. my deceased nephew, William Litzenberg, the sum of six hundred ($600) dollars in cash as his full share of my estate.

"6. I now declare Item No. 22 of my last will and testament null and void and of no effect, and in lieu thereof, I now direct that the beneficiary therein named, Mrs. Amanda B. Holman, take nothing by my last will and testament.

"7. I will and direct that the addition of this codicil to my last will and testament shall not alter, modify or change said last will and testament except as herein specifically set forth in Items 1 to 5, inclusive, of this codicil."

On October —, 1920, testatrix executed Codicil No. 2, the items of which are as follows:

"1. I now declare Item No. 4 of my original last will and testament to be null and void; and I direct that the provisions therein, be for naught held; and in lieu thereof I now give, devise and bequeath to my nephew, Theodore Litzenberg and his wife, Julia Litzenberg the following; described real estate:

"All of Block six (6) and seven (7) in the original town of Stewartsville, Missouri, and all of Block fifty-seven of Tetherow's third addition to the town of Stewartsville, Missouri (being occupied by me as my family residence) together with all my personal property of every kind, character and description, save and except cash, bonds, notes and accounts, provided that they, the said Theodore Litzenberg and Julia Litzenberg, shall live with me, care for, attend and administer to my wants, comforts and necessities in a proper manner during my life time.

"2. This codicil shall not otherwise change or modify any of the other provisions of my said last will and testament or the provisions of codicil number 1 thereto."

The trial court found that it was the intention of the testatrix to bequeath to those nephews and nieces of the first degree to whom she had not, by the will and codicils, given certain sums of money as their full share of her estate, the residue and remainder of the estate; and that Mary Downing Ferril was the only member of the

class described in the residuary clause who survived the testatrix, who had not been bequeathed her full share, and being the only member of the residuary class who survived the testatrix was entitled to the residue of the estate.

The testimony shows that Mrs. King, from a period before the death of her husband in 1906, and thereafter, lived in Stewartsville, a small town in DeKalb County. None of her relatives lived in, or immediately near, Stewartsville at any time, near the period of the making of the will and codicils, except that William A. Wilson, a nephew, one of the executors, and also legatee mentioned in Item 18 of the original will and in Item 4 of Codicil No. 1, lived for a few years, up to about 1909, with the testatrix at Stewartsville. About 1909, he moved to Weston. Some of the children of Rebecca Downing lived in Platte County, as did some of the children of the two deceased sisters. There were some of her relatives living in St. Joseph and some of them in Denver, Colorado. As stated by the witnesses they "were scattered at various places." Some of the children of Rebecca Downing, it appears, lived at no great distance from Stewartsville, but they did not visit Mrs. King. In 1909, immediately following the removal of William A. Wilson, Mrs. King procured a school teacher, Rosa B. Asher, to live with her as a companion. She was not a relative, and she remained with Mrs. King for about seven years. She said that some of the nephews and nieces visited Mrs. King, but did not mention any of the children of Rebecca Downing as doing so, and recalled as visitors only three— William A. Wilson, above mentioned; Theodore Litzenberg, who lived at St. Joseph, and Mrs. Grimm, a niece who lived at Denver, Colorado. She testified that Mary Downing Ferril never visited Mrs. King during the time she remained with her as a companion, and other testimony is that she did not thereafter, at any time, visit Mrs. King. After Rosa B. Asher came to live with Mrs. King, the latter, preparatory to making the will, caused Miss Asher to write letters to ascertain the names and whereabouts of her relatives. By that means a list of them was made. The attorney who drew the will and codicils testified that after he had drawn the first twenty-two items, he quit, for the reason that if she desired to make any additional bequests, that might be done before inserting the residuary clause; that after he had read the manuscript to her, she called his attention to the fact that no provision had been made for what might be left after paying the special bequests, and after that, he drew the residuary clause. From the evidence as to the value of the estate of Mrs. King, which consisted mainly of notes and bonds, it was estimated that at the time of the execution of the original will, the residue of the estate, after payment of the special bequests, would have been between $7500 and $10,000, but her estate increased until

her death, and after the payment of the special bequests, there will remain about $25,000. The special legacies amount to about $21,000.

After the departure of Rosa V. Asher in 1916, Theodore Litzenberg and his wife went to live with Mrs. King, and to care for her, and did so until her death. It may be noted that after this, in 1918, by Item 3 of Codicil No. 1, a legacy of $4200 was given to Theodore Litzenberg "as his full share of the estate" in place of the legacy provided by Item 15 of the original will, and that thereafter, in 1920, by Codicil No. 2, the residence was given to Theodore Litzenberg and his wife, a devise contractual and contingent in nature, upon their caring for Mrs. King, during her lifetime. The evidence shows that William A. Wilson was the one who procured Theodore Litzenberg to come from St. Joseph to live with Mrs. King. The testimony also is that these two, William A. Wilson and Theodore Litzenberg, were the only relatives apparently concerned about the care of Mrs. King; that they were, as the witnesses put it, "the particular ones in her choice;" also that she was somewhat "peeved" because none of her other nephews and nieces paid her any attention. Mr. Snow said none of the Downing children visited her, or paid her any attention, and that none of them came to her funeral. William A. Wilson died before the death of Mrs. King, and left no issue.

We come now to the particular facts and provisions of the will upon which is founded the claim that none of the nephews or nieces of the testatrix may share in the residuary estate, but that the whole of it goes to Mary Downing Ferril. First, is the language in the various special bequests (except to William A. Wilson) that the sum mentioned is given as "his," "her" or "their full share of my estate." Next, attention is called to Item 8 of the original will, giving to the then living sister, Rebecca Downing, the sum of $3000 in cash, stating it was given as her full share of the estate and with request that she distribute the same equally among the named children, one of the nine named being Mary Downing (Ferril). The other two children of Rebecca Downing are given legacies by Items 9 and 11 of the original will. Next, attention is directed to Item 1 of Codicil No. 1, stating the death of Rebecca Downing, and death of her daughter Belle (mentioned in Item 11 of the original will), annulling Items 8 and 11 of the original will, and instead, giving legacies to eight children of Rebecca Downing, deceased, mentioned in Item 8 but not including Mary Downing Ferril, and giving "each the sum of $300 as their full share of my estate."

In construing wills all courts are admonished to have due regard to the directions of the will, and to ascertain and give effect to the true intent and meaning of the testator. Section 555, Revised Statutes 1919. The intent is to be ascertained from the whole

instrument, and the words are to be understood in the sense indicated by the whole instrument, and every clause if possible must have some operation and be effective for some purpose. [Armor v. Frey, 226 Mo. 1. c. 666; Cornet v. Cornet, 248 Mo. 1. c. 215.] Extrinsic evidence of an intent not expressed in a will cannot be considered but "in every case the court is entitled to be placed in possession of all information which is available of the circumstances of the estate and family of the testator when he made his will, to the end that the court may be in his situation as nearly as may be, and may interpret and understand the will as he would." [McCoy v. Bradbury, 290 Mo. 1. c. 658.] Again, the rule covering all the foregoing is stated in Grace v. Perry, 197 Mo. 1. c. 559, quoted with approval in Gannon v. Pauk, 200 Mo. 1. c. 85: "The controlling rule in construing wills in this State, to which all technical rules of construction must give way, is: to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention, the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed."

In this will the residuary clause, standing alone, is unequivocal, and includes the nephews and nieces, all of them, of the first degree. The will names thirty-three of that degree, living and dead, and it is not suggested there were any not named in the will. The question presented is whether the intent expressed in the residuary clause, unqualified in its terms, is so modified by other clauses, that not all, but only one of the specified class is entitled to the benefits of that clause. The contention of counsel for respondents is that the words in the bequests are equivalent to the statement that the legacy given is the only share or part which the legatee shall have in the whole estate. If such is the meaning which must be given the judgment was right. Both codicils express unmistakably the purpose that all provisions of the will, not specifically changed by the codicils, shall remain unimpaired.

We look to the will itself for the meaning of the words in question, which, in every instance, are used with reference to a pecuniary legacy. Preliminary to the making of any bequests, the testatrix inserted Clause 3, which contains the provision: "Should any part of my estate be subject to a collateral inheritance tax, I order and direct my executors to pay said tax out of my residuary estate so that each legatee shall receive his or her full legacy and that the same

be not diminished by said tax." The first bequest made is by Clause 8, to Rebecca Downing with the request that she distribute and divide it equally between her nine children, therein named. The provision that the sum named is given Rebecca Downing as her full share of the estate, served no necessary purpose in excluding her from participating under the residuary clause because she was not a member of the class defined in that clause. Counsel for respondent argue the words applied to Rebecca only, and did not exclude her children. Then follow in succession, eight clauses giving legacies to numerous nephews and nieces of the first degree as his, her or their full share of the estate. Then comes Clause 17, whereby the testatrix gives in cash $800 to Louis V. Stigall and $200 to Ernest Stigall, children of a grandniece, which sums she designates as their full share of her estate. They are not in the clause defined in the residuary clause, and the words "as their full share of my estate" served no purpose in excluding them from a class to which they did not belong. Clause 18 gives $1500 in cash to "my nephew William A. Wilson" without further qualifying words. Then follow three bequests (Clauses 19, 20 and 21), severally made to named sons of William Litzenberg, a deceased nephew, giving a sum in cash, to each, as his full share of the estate. Also, in Clause 5 of Codicil No. One, Clause 19 of the will was annulled and instead an increased amount in cash was given to William Litzenberg, a nephew of the second degree, as his full share. This was eight years after the original will wherein the residuary clause excluded him, and the codicil maintained it. The words in question, inserted in these bequests had no operation in excluding these legatees, nephews of the second degree and of the third degree, from the provisions of the residuary clause. The question arises whether these words have another meaning, and bear relation to the provision above quoted from Clause 3 of the will, and to Clause 4. By Clause 3, the residuary estate is charged with the payment of the tax, if any be levied, so that each legatee shall have his "full legacy, and that the same be not diminished by said tax." In preparing those clauses in the original will, according to the testimony of the attorney who wrote it, to which counsel for respondent call attention, the testatrix had in mind the residuary clause yet to be drawn and whereby she would bequeath the residue of her estate to nephews and nieces of the first degree. When completed and executed it was an entirety. Therefore, in describing the sum given to Mr. Stigall, as his full share of her estate, there arises the question whether she and her attorney used that statement to cut him out of a class which, as defined, would not include him, or, used it to emphasize the fact that he was to receive the "full legacy—not diminished by said tax." Before having the will prepared, she took the trouble to ascertain the

names of her relatives, some of whom the evidence shows were not known to her, and to ascertain the particular relationship of each one; and in naming them, except William A. Wilson, she states the particulars of the relationship. Where there are several children of a deceased brother or sister, she specifies, individually, the particular sum that each shall have, and the sums vary, except, that in Clause 8, and Clause 1 of Codicil No. One, affecting the children of Rebecca Downing, she provides an equal amount for each of those named. These matters are of significance as tending to show her intention was primarily to leave to each of them a designated sum in cash, under such conditions that neither any particular legacy, nor the aggregate should be diminished by the payment of a tax, and that in the use of the words "full share of my estate," she may have used the words in a restricted sense, using the words full share as "full legacy," or a share not diminished by any tax, and using the word "estate" not in the sense of whole estate, but that part of her estate represented by all the pecuniary legacies, and as distinguished from the residuary estate which was charged with payment of the tax on all the legacies, and after that, by its terms applied to all nephews and nieces of the first degree. There is some presumption that the words used in respect to legacies to nephews of the second and third degrees were used in the same sense in reference to nephews and nieces of the first degree; and this is warranted when the sweeping terms of the residuary clause are considered. "So if a testator uses a given word in one part of his will with a certain meaning, it will be presumed that in using the same word in another part he intended it to have the same signification." [28 R. C. L. 222, sec. 183; Bernero v. Trust Co., 287 Mo. 1. c. 628-629.] Clause 4 of the will which precedes any bequest, directs the executors to sell the real estate and perishable personal property of the testatrix "for cash in hand" with the further provision, that in selling household goods and furniture, the relatives shall be given preference over other bidders on such articles as they may desire to purchase. This is indicative of the purpose shown throughout the will, that the legatees are to receive their bequests in cash only, undiminished by any tax, and also not enlarged by the taking of any article as a part of a legacy. That property later was disposed of by Codicil Two. On the theory that the words in question were words of exclusion from participation in the residuary estate, William A. Wilson was the only legatee in the original will to whom the words were not directed, yet the testatrix closed with the clause which gave the residuary estate equally to all *nephews* and *nieces* of the first degree, and this after she had taken the trouble not only to name all her nephews and nieces of the first degree, but as to all of them except William A. Wilson, to set forth the facts as to their

parentage, showing the particular relation. On the theory advanced by counsel for respondent that Clause 8 of the original will did not apply as for exclusion of the nine children of Rebecca Downing therein named, the nine would have taken nine-tenths of the residuary estate, had the testatrix died before the death of Rebecca.

Mary Downing Ferril was one of the nine children named in Clause 8, and the essential element of the claim that she and not any of the other nephews and nieces, is entitled to take the residuary estate, rests upon the fact that by Codicil No. One, Clause 8 was annulled, and her name was omitted from the number of children of Rebecca Downing therein named, and thereby she is not subject to any words of exclusion. Necessarily, the omission of her name was either intentional or the result of mere inadvertence. The codicil states the death of Rebecca Downing as the reason for annulling Clause 8, and the making of a new provision. If the testatrix conceived that she had excluded the other nephews and nieces from the residuary estate by the terms of their legacies, and was intentionally omitting Mary Downing from the codicil, it would mean she and her attorney at the time of the making of the codicil took the indirect and obscure method of the mere omission of her name, to put her in a class by herself as the only niece entitled to take under the residuary clause. There is not a circumstance shown in the testimony which indicates that Mrs. King favored Mary Downing either more or less than she did the other eight brothers and sisters, named in the codicil. The original will shows that she favored Belle Downing and Rebecca Hill more in giving special legacies than she did the other children of Rebecca Downing. There is a fact shown by the will and codicil which is suggestive that the omission was through inadvertence. Clause 8, in naming the nine children, begins with Strather Downing, and so does the codicil, but thereafter the order of their naming in the codicil is different from that followed in Clause 8. To say that the name of Mary Downing was omitted intentionally, would be mere conjecture. To hold that the words in Clause 8 were words of exclusion and applied to Rebecca Downing only, would mean they were uselessly applied to her; and to hold that these words did not apply to her nine named children would mean that testatrix intended by the residuary clause originally to give to the nine children nine-tenths of the residuary estate, the remaining one-tenth going to Wilson. But, after and apparently because of the death of Rebecca Downing, the testatrix revoked that clause and gave to the eight children named $300 each or $33.33 less than she had given them under Clause 8, and in this new provision she used the words which, it is asserted, excluded the named children from a share in the residuary estate. This subsequent action of the testatrix does

not indicate that she understood Clause 8 to mean that the $3000 given thereunder went to Rebecca only, or, that the words, if of exclusion, applied to Rebecca only, or, that under her purpose, the named children were on a different footing from other nephews and nieces of the first degree in respect to the residuary clause of the will. Aside from the bare fact of omission of the name of Mary Downing, the codicil shows no change of purpose, but only a change adapted to the existing condition, due to the death of Rebecca Downing, and this is emphasized by the fact that the death of Belle Downing also had occurred, and testatrix did not use that as an occasion for increasing the special legacies to the other children of Rebecca Downing.

It is true, as urged by the respondent, that to give effect to all parts of the will, the general words of one part may sometimes require to be limited in their application, and it is also true that courts apply this rule in the construction of the residuary clause of a will and limit the application of the general words. The contention is that in the instant case the words as ''her'' or ''his'' or ''their full share of my estate'' as used in the several paragraphs of the will, are clear and definite and with their context excluded the persons to whom they applied from participation in the residuary estate as given by the original will, and preserved by the codicils. As instances of the application of this rule we are cited to Hurst v. Von De Veld, 158 Mo. l. c. 250; Haralson v. Redd, 15 Ga. l. c. 153; McQueen v. Lilly, 131 Mo. 16; Everitt's Estate, 195 Pa. 450; Dickison v. Dickison, 138 Ill. 547, 548; Hays v. Davenport, 25 Vt. 109; Ellison v. Woody, 6 Mumf. (Va.) 368; Barbara Herr's Estate, 28 Pa. 467; Lamar v. McLaren, 107 Ga. 605; Barnard v. Barlow, 50 N. J. Eq. 136; Burton v. Burton, 102 S. E. (So. Car.) 282.

In the cases cited there was no difficulty in saying that the words claimed to exclude the legatee, or devisee, from a share in the residuary estate, were clear, and not to be reconciled with the general terms of a residuary clause.

In Hurst v. Von De Veld, the testator gave back to the legatee a note executed by her, and ''$50 of my estate, and no more.''

In Everitt's Estate the words were: ''This shall be considered as the only share she is to have out of my estate.''

In Dickison v. Dickison, the property left to those held excluded from a general residuary clause was a tract of land, which the will gave ''to be in full of their portion of my estate, both real and personal, to be theirs, their heirs and assigns forever.'' ''Portion'' was held to be equivalent to *part, share* or *division* and a complete measure of what the parties should take.

In Hays v. Davenport, those excluded were grandchildren of the testator. They were given $25 each, naming them ''to be in full

of all and for all other provisions made by me for them in any will or codicil by me made, hereby revoking any other provision by me made for my said children."

In Ellison v. Woody (decided in 1819) the legatee was given "six pounds and no more," the opinion stating further, "she having received what he thought sufficient of his estate."

In Barbara Herr's Estate, the legatees held excluded were two grandsons to whom were given $500 each, "to be their share in full, coming out of my estate real and personal."

In Lamar v. McLaren, the bequest of the testator was to his "children" of any property that might revert to his estate, with the provision: "My grandson Henry J. Lamar Washington in no way to participate therein." It was held in the latter provision that the word "children," was to include the descendants of children; but, also held that it did not include the said devisee, Washington.

In Bernard v. Barlow, the testator gave his estate to his four daughters, "all and except $1 each, to my two sons, trusting that they will follow my example of industry to gain what they may require."

In Burton v. Burton, the testatrix, by Item Two of her will, gave a son a certain tract of land, and by Item Nine gave certain named grandchildren $25 each "as their full share of my estate to be paid each when twenty-one years old by my executor." By a codicil, she gave to the son $50 "as his full and just part of my estate," instead of the land ·given in the original will, and in this codicil she further directed that said tract of land ·be sold and the proceeds divided equally among her *other* "heirs herein named." It was held she used the words "other heirs" to refer to her other children. In each of these cases the question at issue was whether the words used were certain, as showing a particular intent inconsistent with the general intent elsewhere expressed.

In the instant case, if Mrs. King had used the words in question in only one or in a limited number of bequests to nephews and nieces of the first degree, and used the same residuary clause, we would regard the words so used as of certain meaning and as words of exclusion. But, the very fact that in the will she used the words in respect to every one of her nephews and nieces of the first degree except William A. Wilson, if he was such, and used the same words in respect to the nephews and nieces of the second and third degrees, and followed that with the residuary clause in its terms including all of those of the first degree, raises a question as to the meaning of those words, and makes it uncertain that by those words, so reiterated, she meant to exclude any of her nephews and nieces of the first degree from sharing in the residuary estate. There is not a

thing in the record tending to show that in 1910 there were, or that she thought there were, relatives not mentioned in the original will, except children of the then living nephews and nieces, or, that she thought the residuary clause was designed to provide for any whom she had not named. The plaintiffs named in the suit and not named in the will are descendants of nephews and nieces of the first degree who were named in the will, but died either before or since the death of Mrs. King. The last codicil was executed more than ten years after the will, and meantime her estate was increasing and at her death twelve years after the date of the will, the residuary estate amounted to more than the sum of the special legacies.

To the mind of the writer the constant and repeated use of the words as to nephews and nieces, so described as to show they were of the first degree, and use of the same words as to the nephews of the more remote degrees, instead of emphasizing and making certain an intent thereby to exclude those of the first degree, makes it reasonably certain she did not use the words as words of exclusion from the residuary estate. The words are used in each of Clauses 8 to 21, inclusive, except Clause 18. In Clauses 8 to 16 inclusive, thirty-two nephews and nieces of the first degree are mentioned, with the qualifying words, and five nephews of more remote degree are mentioned in the succeeding clauses.

The dominant intention which is shown, was first to give to each of her relatives, to each nephew and niece, living, and to children or grandchildren of those dead, a fixed and certain sum in cash, which sum was not to be diminished by any tax, nor varied by any division or appropriation of any personal belongings, or household property, but to be to each a "full legacy," a legacy "not to be diminished;" and next the equal division of the residue among the nephews and nieces of the first degree. If it be urged that the third clause would be applied anyhow, for the purpose of the payment of any tax upon the special legacies, and the use of the words in that connection was unnecessary, and therefore they were not so used, it can, with equal force be urged that as to some of the legatees, the use of the words of exclusion were unnecessary.

Some further mention of the terms of the will as to William A. Wilson may be made, a thing material only upon the question of the intention of the testatrix, because he died without issue, before her death. He is referred to as her nephew and presumably a nephew of the first degree, but the particulars of his relation to her are not set out as they were concerning all others. The words in question are not a part of the bequest to him either in the will or in the codicil. His is the only bequest wherein a pecuniary legacy was given to a nephew without use, either directly or indirectly, of the words in question; yet, the residuary clause included nieces. He

was an executor, directed by the will to pay out of the residuary estate any collateral inheritance tax on all the other legacies, and by the same provision, was authorized to pay it on his own legacy. He had no brother or sister to be given a legacy, and no child. He was not a member of a group to whom was applied the words "as their full share of my estate." The argument for respondent on the intent and effect of the original will, is, that William A. Wilson was not excluded from the residuary class; that the bequest in Clause 8 did not create a precatory trust, and that bequest would have gone to Rebecca Downing; that the words of exclusion there used applied only to Rebecca, and not to her named children; that by omission of the name of Mary Downing Ferril in Clause 1 of Codicil No. One, and inclusion therein of her eight brothers and sisters, and use as to them of the words in question, they were excluded from the residuary clause, and she became the only niece permitted to take under that clause.

It is urged there was nothing imperative in the language of Clause 8; that no trust was created, and it is suggested that since testatrix and her attorney showed by Clause 15 they knew how to create a trust, it must be taken as certain that no trust was intended under Clause 8, and that it simply made a bequest to Rebecca Downing. The rulings in Lemp v. Lemp, 264 Mo. 546, 552; Small v. Field, 102 Mo. 128; State ex rel. v. McVeigh, 181 Mo. App. 577; Hayes v. Hayes, 242 Mo. 170, and also in cases in other jurisdictions, are cited.

In Lemp v. Lemp the property was given to the widow, as the will expressed it, "all . . . absolutely." The subsequent clause relied on to create a trust is summarized, using the words of the will in the opinion written by Judge GRAVES, l. c. 549, as follows: "I make no gift here to my children . . . and I make no gift here to my grandchild, . . . having perfect confidence that my wife will, *without any request on* my part, *and none such is here made,* do best for them." (The italics are the court's.)

In Small v. Field the bequest to a daughter was expressed to be "for the sole use of herself and children." The words were held not sufficient to create a trust.

In the Hayes case there was merely a "verbal suggestion of the testator not contained in his will."

In State v. McVeigh, the testator left one dollar to a son "explaining that he thought it best to give the mother a sufficient sum to enable her to supply his needs, according to her discretion."

In the instant case the testatrix does request Rebecca Downing to distribute and divide the sum given.

If the words used in Clause 8 be construed to be words of exclusion, they are useless, if applied only to Rebecca Downing, and strained, if applied to her nine children, named therein. If not

used as words of exclusion, but only as defining the sum given as a "full legacy," a sum not to be diminished, nor enlarged, there is no need of discussing here the question whether the $3,000 would have gone to Rebecca Downing, or to the nine children, had Rebecca outlived the testatrix, or, whether the nine could have shared in the residuary estate.

We have come to the conclusion that the testatrix, by Clause 3, aided somewhat by Clause 4, gave her own definition of what she meant by "full share of my estate," and this meaning is to be read into each clause. If given the meaning indicated, these words apply to all the legatees alike, regardless of the degree of relationship, and as so construed no clause runs counter to the residuary clause. If construed as words of exclusion, they have no application in some clauses, and in all others, run counter to the residuary clause.

"The words used by a testator are to be understood in their ordinary sense unless a different meaning is indicated by the context, or by the circumstances of the case." [28 R. C. L. 223.] But, "when the context of a will shows the testator to have used words in a certain sense, the court should follow this in preference to a meaning given by lexicographers, or that given in various adjudged cases." [28 R. C. L. 222.] More completely the rule is stated in the opinion in Carnagy v. Woodcock, 2 Mumf. (Va.) 234, 1. c. 239: "The testator having explained his own meaning in the use of these terms, I shall take that as my guide, without resorting to lexicographers to determine what the same terms ought to mean in the abstract, or to adjudicated cases to discover what they have been decided to mean under different circumstances." Taking all the terms of this will into consideration, we are of the opinion that in the use of the particular words here in question, the testatrix had reference to the share given in each of these many legacies as a share which would represent a "full legacy"—one not to be diminished—and restricted the use of those words to the clauses in which the legacies were given, and did not mean a full share of the whole of her estate, nor mean to exclude nephews and nieces of the first degree from the provisions of the residuary clause, and from an equal share in her residuary estate,—the estate remaining after the prior mentioned legacies had been provided for in full, according to her intention, as expressed in Clauses 3 and 4, and the respective clauses covering the legacies. We hold that the will shows an intention to give to each one of her relatives of varying degrees, a sum appropriate to the favor of the testatrix toward each of them, respectively; and then, an equal division among only those of the first degree. The provision of Clause 1 of Codicil No. One, omitting the name of Mary Downing, does not avail as showing a change of this, the real and dominant intention of

the testatrix. The court erred in its conclusion that Mary Downing Ferril was entitled to the whole of the residuary estate.

The trial court, having reached the conclusion that Mary Downing Ferril was entitled to the whole of the residuary estate, could not go farther to consider the rights of plaintiffs who are descendants of nephews and nieces of the first degree who died before the death of the testatrix. Under the holding, it was unnecessary to go into that question. In view however, of the conclusion we have reached, it is necessary to notice the request made by counsel for appellants that there be determined the respective rights of the plaintiffs, some of whom are nephews and nieces of the first degree who survived the testatrix, and others are descendants of nephews and nieces of the first degree who died before the death of the testatrix. The petition alleges the death of William A. Wilson without issue, prior to the death of the testatrix, and makes the same allegation as to George H. Litzenberg, named under Clause 16 of the will and Charles Downing, named in Item 8 of the will and Item 1 of Codicil No. One. The petition alleges that the following nieces and nephews of the first degree to whom bequests were given, died prior to the death of the testatrix, and leaving surviving them children who are made plaintiffs. The eight so named are, Strather Downing, Eliza Downing, Simeon Downing, William J. Shearer, Rebecca Anne Addleman, Martha Jane Brown, Emaline P. Preston and Rebecca Hill. As to these, the allegation in the petition is, that the children of those deceased ones are nephews and nieces of the testatrix in the second degree, and therefore have no interest in the residuary estate. The answer admits that the plaintiffs, descendants of those above mentioned as dying before the death of the testatrix, have no interest in the residuary estate. As to these, the pleadings did not make an issue. The petition farther states that Susan R. Shearer, given a legacy under Clause 2 of Codicil No. One, was a niece of the first degree and died subsequent to the death of the testatrix, without issue, but was survived by plaintiffs Sarah A. Grimm, and Harriet Nottingham, her sisters, and by five other plaintiffs, her nephews and nieces, children of William J. Shearer, her deceased brother; and the petition avers that the plaintiffs so named are entitled to the special bequest made to Susan R. Shearer and to her share in the residuary estate. The answer admits the facts stated in that behalf, but denies that the said sisters and nephews and nieces of Susan R. Shearer, have any interest in the residuary estate. The rights are to be determined in accordance with the facts alleged and admitted, and mere legal conclusions stated in the pleadings do not control.

A determination of the rights of the various plaintiffs becomes necessary, as determining also the correlative duties of the executor, and, also the right of the respondent as administrator of the estate of

Mary Downing Ferril, who survived the testatrix, but died pending this suit.

Section 516, Revised Statutes 1919, is as follows: "When any estate shall be devised to any child, grandchild or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real or personal, as such devisee would have done in case he had survived the testator." The provisions of this statute would not apply to the three nephews who predeceased the testatrix and left no "lineal descendants." The legacies to those three lapsed, and went to swell the residuary estate. The legacies and shares of the nephews and nieces of the first degree who died before the death of the testatrix, but left children surviving them, did not lapse, and the surviving descendants of a deceased nephew or niece take the share which the parent would have taken. Section 516, as was ruled in Wattenbarger v. Payne, 162 Mo. App. 434, applies to bequests or legacies as well as devises. This seems to be the only conclusion from the fact that the section provides that a lineal descendant shall take the estate, "real or personal, as the devisee would have done in case he had survived the testator." Also, nephews and nieces are relatives of the testator in the sense used in Section 516. This is in accordance with the holding in Bramell v. Adams, 146 Mo. 70, 88, and McMenamy v. Kempelmann, 273 Mo. 459, 460, the meaning being that a relative is one related by consanguinity, or is the testator's "own blood" kindred. The effect of Section 516 in respect to the surviving issue of nephews and nieces of the first degree who died before the death of the testatrix, is settled by the ruling in Murphy v. Enright, 264 S. W. 811, where it is held that the common-law rule that a devise to a class of persons takes effect in favor of those who constitute the class at the death of the testator, is abrogated by Section 516. Reference is made in the opinion in that case to the ruling in Lounden v. Bollam, 302 Mo. 490, a case in Court en Banc. Under the rulings in those cases, although the residuary estate is given to nephews and nieces of the first degree, constituting a class, where a member of the class died before the testatrix, leaving lineal descendants, such descendants take the interest which such member would have taken had he survived the testatrix.

The bequests made to nephews and nieces of the first degree who survived the testatrix, vested in them at her death; and, upon the subsequent death of such a nephew or niece, his or her bequest went to his brothers and sisters living, or children of any deceased brother or sister, in accordance with the provisions of Sections 303 and 307, Revised Statutes 1919. Susan B. Shearer is the only member described as surviving the testatrix and later dying without issue.

Under the conclusions reached, the judgment must be reversed, and the cause is remanded that judgment may be entered setting forth the

interests of the parties in accordance with the conclusions heretofore stated. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.